OPINION OF THE COURT
Philip S. Straniere, J.
Defendants move for an order dismissing the complaints of the plaintiffs as against the individual defendants, Nasser Yaghoob Zadeh (hereinafter Zadeh) and Victor Freudman (hereinafter Freudman) and/or for summary judgment. Plaintiffs, in opposing said motion, seek summary judgment in their favor.
The instant action was originally commenced by the plaintiffs, pro se, alleging that the defendants, Smyrna Building Corp. (hereinafter Smyrna) and the individual shareholders thereof, Zadeh and Freudman, breached a contract for the sale of real estate in failing to provide a final tax abatement. The plaintiffs then retained an attorney and amended their complaint to allege that, in addition to breaching the contract, the defendants committed fraud in the inducement by represent *651 ing to the plaintiffs that as purchasers of homes from the defendants they would receive an eight-year tax abatement for the property and subsequently failing to deliver the abatement in accordance with the terms of the contract. Additionally, plaintiffs seek to pierce the corporate veil and hold the principals and shareholders of the corporation, Zadeh and Freudman, individually liable for their acts.
At various times in or about 1996 each of the plaintiffs and the defendant Smyrna entered into contracts for the purchase of a home. The contracts, apparently negotiated by attorneys, which were the standard form of agreement for the purchase of new construction residential property, provided, inter alia, at paragraph 10B that the purchaser would reimburse the seller the sum of $425 for the cost of filing for a tax abatement pursuant to Real Property Tax Law § 421-b. The contracts recited that “the tax abatement may commence at a date before or after closing of title and that real estate taxes may be based on the full assessed value of the premises until such time as the abatement goes into effect.” The contract executed by the plaintiffs Steven Cilento and Chana Cilento (hereinafter Cilentos) contained a handwritten addition to paragraph 10B which stated that the “seller to deliver Prelim [421-b] at closing and Final [421-b] at or post closing.” A rider entitled “Quality Features List” attached to the Cilento and Lepore contracts refers to numerous items to be included in the purchase, one of which is an “8 year tax abatement.” Additionally, the defendant Smyrna and all the plaintiffs each signed letter agreements subsequent to the dates of the contracts regarding the tax abatement. The letter commences by stating that its purpose is to confirm that the purchaser understands the above-cited paragraph “10b” and states that: “The purchase price includes a tax abatement under Section [421-b] of the Real Property [Tax] Law”, thereby confirming the agreement to deliver a tax abatement. The letter goes on to explain that the implementation of the abatement may not take effect immediately prior to or after the closing and the purchasers may be entitled to a refund from the City for overpayment of taxes paid prior to the effective date of the abatement. The letter agreement unequivocally warrants that an abatement will result by stating in its concluding paragraph that: “We want to assure you that you will be getting the full tax abatement benefits. It may just take a longer period of time to phase in”. The court notes that defendant Smyrna underscored the words “will” and “full” in its letter, thereby making it abundantly *652 clear that it intended to provide the abatements to the plaintiffs.
The court finds that defendant Smyrna promised the plaintiffs that it would supply an eight-year tax abatement and is bound by that promise as expressed in the contract of sale and the subsequent letter agreement. There is no evidence in the contract or letter agreement which supports Smyrna’s contention that its only obligation was to file the appropriate papers for the abatement and obtain a preliminary certificate of eligibility of the tax abatement and that it did not guarantee that the abatement would be effectuated. The intent of the parties is clear and can be ascertained and discerned within the bounds of the contract and letter agreement. The language of both documents is unequivocal. There is no limiting or qualifying language which refers to the fact that seller’s only obligation was to deliver the preliminary certificate. There is no reference to what would occur in the event an abatement was not issued. Moreover, by executing the letter agreement Smyrna exercised affirmative efforts to insure that the purchasers understood that they would be receiving an abatement and to resolve any questions the purchasers may have had concerning the complexities of the abatement process. Smyrna emphasizes that the four contracts recite that they contain the entire understanding of the parties and that “all understandings and agreements heretofore had between the parties are merged in this contract, which alone fully and completely expresses their agreement.” Plaintiffs contend that they were repeatedly assured by Freudman and Zadeh that they would receive the abatement and that newspaper ads advertised an abatement as one of the prime features of the home. With respect to the breach of contract cause of action, the court finds that the documents speak clearly for themselves and evidence the parties’ intentions and understanding that the seller would deliver a tax abatement.
In order to obtain summary judgment, the movant must establish his cause of action sufficiently as a matter of law to warrant the court to direct judgment in his favor, which the movant must establish and support by a tender of evidentiary proof in admissible form (Zuckerman v City of New York, 49 NY2d 557 [1980]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979]; CPLR 3212 [b]).
Accordingly, the court finds that the parties’ understanding and agreement was that defendant would provide plaintiffs with a final tax abatement and that the plaintiffs have *653 sustained their burden of establishing that defendant Smyrna breached its contract with the plaintiffs in failing to provide a tax abatement to the purchasers. The matter will be set down for a trial to determine the amount of damages sustained by the plaintiffs as a result of defendant’s breach.
Defendants also seek an order dismissing plaintiffs’ complaint against the individual defendants, Freudman and Zadeh. Plaintiffs allege that Smyrna’s corporate veil may be pierced and Freudman and Zadeh held individually liable because they represented to the plaintiffs that the property would be tax abated, that said representations were false and fraudulent and induced plaintiffs to rely thereon and purchase the property.
The generally accepted principle in New York is that a corporation exists as a separate legal entity, independent of its owners and, as such, said owners or shareholders are not individually responsible for the debts of the corporation. Additionally, it is well established that a corporation may be incorporated for the express purpose of limiting the liability of its shareholders (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135 [1993]; Bartle v Home Owners Coop., 309 NY 103; Hyland Meat Co. v Tsagarakis, 202 AD2d 552 [2d Dept 1994]; Matter of Total Care Health Indus. v Department of Social Servs., 144 AD2d 678 [2d Dept 1988]; 14 NY Jur 2d, Business Relationships, § 40 et seq.). The courts have consistently met with difficulty in seeking to establish a definitive set of rules regarding piercing the corporate veil and thus have determined that this concept and its application depend on the circumstances and facts of the individual case and the courts may do so where certain factors are present and in furtherance of the ends of justice (Walkovszky v Carlton, 18 NY2d 414 [1966]). It is generally accepted that to pierce the corporate veil, there must be a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff’s injury (Matter of Morris v New York State Dept. of Taxation & Fin., supra; Austin Powder Co. v McCullough, 216 AD2d 825 [3d Dept 1995]; 14 NY Jur 2d, Business Relationships, § 40). Plaintiffs contend that discovery is necessary in order to determine whether the facts of this case warrant the piercing of the corporate veil. Included in, but not limited to, the factors necessary to determine domination and control are: the absence of formalities which are part of the *654 corporate existence; inadequate capitalization; absence of assets, liabilities or income; personal use of corporate funds; shuttling personal funds in and out of the corporation; or the perpetration of fraud by means of the corporate vehicle and the existence of posttort activity conducted to strip the corporation of assets in anticipation of impending legal liability (14 NY Jur 2d, Business Relationships, § 37). In light of the aforementioned guidelines, the court agrees that plaintiffs are entitled to discovery to determine if the requisite factors are sufficiently present in this case to warrant piercing the corporate veil.
Defendants also seek an order dismissing plaintiffs’ cause of action for fraud. Defendants’ motion is denied at this time. The elements necessary to sustain a cause of action in fraud are generally questions of fact to be determined at trial and it must be shown that a representation was made as a statement of fact which is known to be untrue or recklessly made, and for the purpose of inducing the aggrieved party to rely on it to his detriment (60 NY Jur 2d, Fraud and Deceit, § 11). Generally, a cause of action for fraud may not be maintained when the only fraud charged relates to a breach of contract (Tomkins PLC v Bangor Punta Consol. Corp., 194 AD2d 493 [1st Dept 1993]). However, where there are material misrepresentations and said representations have induced the parties to enter into the contract, to their detriment, a cause of action in fraud may be maintained (White v Guarente, 43 NY2d 356 [1977]; 60 NY Jur 2d, Fraud and Deceit, § 26). The question of whether the defendants committed fraud in representing that they would deliver a tax abatement is one to be determined by the trier of fact.
The court finds that the defendants’ assertion that they did not have to provide a final certificate in regard to the tax abatement to be disingenuous at best and patently absurd at worst. Since the institution of the tax abatement program, the construction industry in the City of New York, and on Staten Island in particular, has heralded the existence of the tax abatement as a necessary element in inducing new home buyers to purchase real property in the City. Almost every new construction project that is approved for a tax abatement emphasizes that fact in all of its marketing tools.
Home buyers calculate the reduced taxes promised in determining if they can afford the monthly carrying costs for the purchase of a new home. In addition, many institutional lenders factor in the reduced taxes that will be assessed on the property in determining if the purchaser has the financial abil *655 ity to meet the monthly mortgage payments. (Although many lenders are now using the full assessment without the abatement being in place to determine the borrower’s ability to make payments after having had negative experiences with builders failing to provide the final abatement certificates in a timely manner and the borrowers then being unable to meet their monthly obligation.)
Further, the items needed to be submitted to the taxing authority to obtain the final eligibility certificate are not in the control or the capabilities of the purchaser to provide. They are, for the most part, all within the purview of the builder or are dependent upon the work done by agents, servants, employees or independent contractors of the builder. Often, the final abatement certificate is not issued because the final certificate of occupancy has not been obtained from the Building Department, another process that is within the control of the builder since he provides the necessary documents to that agency.
Accordingly, the action is set down for trial on the causes of action for fraud, and whether sufficient grounds exist for piercing the corporate veil upon completion of discovery, the submission of the proper forms and payment of the proper fee, if any.