### In re ADELPHIA COMMUNICATIONS CORPORATION, et al., Debtors.

**Devon Mobile Communications Liquidating Trust, Plaintiffs,**

v.

**Adelphia Communications Corporation, et al., Defendants.**

**Bankruptcy No. 02–41729 (REG). Adversary No. 04–03192.**

United States Bankruptcy Court, S.D. New York.

March 17, 2005.

---

Young, Conaway, Stargatt & Taylor, LLP, by Martin S. Lessner, Esq., Richard H. Morse, Esq., Wilmington, DE, for Devon Mobile Liquidating Trust.

Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, by Joanne B. Wills, Esq., Matthew J. Borger, Esq., Wilmington, DE, for Adelphia Communications Corp., et al.

Harter, Secrest & Emery, LLP, by Raymond L. Fink, Esq., Buffalo, NY, for Devon General Partnership, Inc. and Lisa–Gaye Shearing Mead.

## MEMORANDUM DECISION ON DEFENDANTS' ADELPHIA COMMUNICATIONS CORPORATION, ET AL. MOTION FOR LEAVE TO FILE THIRD–PARTY COMPLAINT

CECELIA G. MORRIS, Bankruptcy Judge.

Adelphia Communications Corporation, et. al., has filed a Motion for Leave to File a Third–Party Complaint (the "Leave Motion") against Lisa–Gaye Shearing Mead and Devon General Partner, Inc. Putative Third–Party Defendants filed a Cross Motion to Intervene. Plaintiff Devon Mobile Communications Liquidating Trust filed a Response to Defendant's Motion for Leave to File a Third–Party Complaint, and Adelphia Communications Corporation, et. al., filed a Reply Memorandum in Further Support of their Motion for Leave to File Third–Party Complaint. Upon the foregoing submissions, and the oral argument held before the Honorable Robert E. Gerber[1] on December 15, 2004, and before the Honorable Cecelia G. Morris on February 23, 2005, the Defendants' Leave Motion is denied.

---

1. Judge Gerber recused himself from this adversary proceeding by means of an endorsed order dated January 12, 2005, ECF Docket No. 23. The case was re-assigned to Judge Morris on January 21, 2005, see ECF Docket No. 24.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. Proceedings to determine, avoid, or recover preferences, fraudulent conveyances are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F) and (H).

## BACKGROUND FACTS

On November 3, 1995, Devon G.P., Inc. ("Devon G.P.") and Adelphia Communications Corporation ("Adelphia") entered into the Agreement of Limited Partnership (the "Limited Partnership Agreement") of Devon Mobile Communications, L.P. ("Devon"). Pursuant to the Limited Partnership Agreement, Devon G.P. was the sole general partner of Devon and Adelphia was the sole limited partner of Devon. Lisa–Gaye Shearing Mead ("Ms.Mead") was the sole owner and President of Devon G.P.

Devon Mobile Communications Liquidating Trust (the "Liquidating Trust") is the successor in interest to Devon and was established pursuant to an October 1, 2003 Order (the "Devon Confirmation Order") of the United States Bankruptcy Court for the District of Delaware in *In re Devon Mobile Communications, L.P., et al.,* Case No. 02–12431(PJW) confirming the First Amended Joint Plan of Liquidation of Devon Mobile Communications, L.P. and the Devon Creditors Committee (the "Devon Plan"). By and through the Devon Plan and the Devon Confirmation Order, all of Devon's assets, including its causes of action, were transferred to the Liquidating Trust.

On June 21, 2004, the Liquidating Trust commenced this adversary proceeding by filing its complaint (the "Complaint") alleging damages for certain preferential transfers, fraudulent conveyances and breaches of contract, deepening insolvency and alter ego liability. The Complaint contains five causes of action.

The following facts, gleaned from the Complaint, are included to provide background for the third-party complaint and should not be construed as findings of fact by the Court. Devon was established in 1995 for the purpose of participating in Federal Communications Commission ("FCC") spectrum auctions, acquiring the rights to certain FCC licenses, building and operating personal communications services ("PCS") networks in those license areas and to market PCS services to Adelphia and other non-Adelphia customers in those areas. Devon was established and structured to benefit from FCC preferences regarding the sale of FCC licenses to minority and women owned businesses and small and very small businesses. Adelphia owned 49.9% of Devon LP. Devon G.P., which Ms. Mead owns, held the remaining 50.1%. Pursuant to the Limited Partnership Agreement, Adelphia was to provide Devon with virtually all of its working capital. Adelphia had the right of first refusal over any external financing procured by Devon. Devon and Adelphia entered into service agreements in which Adelphia agreed to provide Devon with certain services.[2] Adelphia also purportedly had control over Devon's bank accounts. The Complaint also alleges that Adelphia dominated Devon, billed Devon for the aforementioned "services" for an amount not equivalent to the value of ser-

---

**2.** These services included human resources administration, product pricing, accounts payable, tax preparation, payroll, financial statement preparation, bank account reconciliation, accounting services, purchasing, insurance, collection of receivables, and cash management.

vices billed, i.e. overcharged Devon for the services provided, and caused Devon to make payments for services which were preferential in nature. Additionally, it is alleged that Adelphia caused Devon to improperly transfer funds as a return of capital contributions in violation of the terms of the Limited Partnership Agreement. It is also stated in the Complaint that Adelphia continued to cause Devon to incur obligations knowing full well it would not be able to provide the capital funding it had represented it would provide to Devon, all the while transferring funds from Devon in payment of the services agreements and in return of their capital contributions. It is further alleged that Adelphia dominated and controlled Devon to the extent that Devon was merely an instrumentality of Adelphia. The Complaint denominates Adelphia as a *de facto* general partner of Devon LP. Adelphia is also accused of breaching its duty to fund Devon's operations, and the Complaint maintains that the lack of funding, coupled with Devon's inability to procure alternate financing as result of Adelphia's position as exclusive financier of Devon, caused Devon to fail. Consequently, Devon LP filed for Chapter 11 protection on August 19, 2002. The Liquidating Trust is seeking to have Adelphia return all the preferential and improper transfers and also to pay all creditors of the Devon Liquidating Trust.

On August 20, 2004, Defendants filed their answer and affirmative defenses, and defendants Adelphia Communications Corporation and ACC Telecommunications of Virginia, LLC filed a Counterclaim against the Liquidating Trust for claims arising from breaches of contractual relationships with Devon. On September 30, 2004, the pleadings were closed when the Liquidating Trust filed its Answer to Defendants' Counterclaims.

On November 22, 2004, Adelphia filed a Motion for Leave to File Third–Party Complaint (the "Leave Motion").[3] The Leave Motion is premised on the contention that Adelphia may have a claim for contribution or indemnity against Ms. Mead and Devon G.P., and to allow the assertion of such claims by means of impleader would promote judicial efficiency. Adelphia also seeks to permissively join an independent claim for breach of fiduciary duty against Ms. Mead, in her capacity as an officer of Devon G.P.[4]

The proposed third-party complaint, which is annexed to the Leave Motion as Exhibit "A," contains only three counts. The factual allegations essentially state that Ms. Mead, as sole owner and as an officer of Devon G.P., had *de facto* control over Devon LP because she "dominated and controlled" Devon G.P., by virtue of several provisions of the Limited Partnership Agreement which are set forth *seriatim* in the third-party complaint. The

---

**3.** Fed.R.Civ.P. 14. Third–Party Practice (a) When Defendant May Bring in Third-party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer.

**Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.** (emphasis added).

**4.** Fed.R.Civ.P. 18. Joinder of Claims and Remedies (a) Joinder of Claims. A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.

third-party complaint avers that the Limited Partnership Agreement gave Devon G.P. complete authority to make all decisions for Devon LP. Adelphia also states that all services rendered by Adelphia were subject to Devon G.P.'s approval. Finally, the proposed third-party complaint advances that Ms. Mead negotiated a self-serving amendment to the Limited Partnership Agreement (the "Second Amendment") which would have provided her with some cash windfalls; however, Adelphia acknowledges that the amendment was never executed. The three counts of the complaint are summarized below.

The first count of the third-party complaint seeks contribution from Devon G.P. and Ms. Mead in the event that Adelphia is found liable for any damages in this adversary proceeding. It is Adelphia's position that Ms. Mead, as officer of the general partner, exercised complete domination and control of Devon G.P., and on that basis owed fiduciary duties to both Devon, the limited partnership, and to Adelphia, the limited partner. Adelphia denies liability for damages sought in the Complaint; however, if damages are assessed, it is Adelphia's contention that Ms. Mead personally participated in the wrongs complained of by the Liquidating Trust by virtue of her complete domination and control over Devon G.P. Therefore, Adelphia avers that it is entitled to contribution from Devon G.P. and Ms. Mead. The second count of the third-party complaint seeks common law indemnification from Devon G.P. and Ms. Mead. The allegations contained in this count are identical to those of the contribution claim.[5] The third

and final count of the third-party complaint seeks recovery for an alleged breach of fiduciary duty. Adelphia argues that officers of corporate general partners owe fiduciary duties to the limited partners. As it is Adelphia's claim that Devon G.P. and Ms. Mead dominated and controlled the affairs of Devon at all relevant times, Devon G.P. as general partner and Ms. Mead as president of Devon G.P. owed fiduciary duties to the limited partner, Adelphia. These duties were allegedly breached by putative third-party defendants' failure to make arrangements for financing of the partnership which would have permitted the partnership to accomplish its purpose, i.e. to establish PCS networks, by failure to devote sufficient time to the partnership business as was necessary to efficiently manage and supervise the business affairs of the Partnership; by Third–Party Defendants' actions in causing the partnership to incur obligations which it could not pay; and by Third–Party Defendants' failure to keep apprised of market trends and act to maximize asset value.

Plaintiff Liquidating Trust's Response to the Leave Motion does not oppose the Motion to File the Third–Party Complaint; however, Plaintiff does opine in its response that the Motion appears futile, as it is simply illogical that Mead or a general partner could be liable to Adelphia for more than $50 million that Adelphia improperly removed from Devon.

In response to the Leave Motion, the Third–Party Defendants filed a Cross–Motion to Intervene pursuant to 11 U.S.C. § 1109(b)[6] and FRBP 7024 (the "Cross Motion").

---

**5.** Although the second count of the complaint seeks indemnification, paragraph 40 of the complaint incorrectly states that third-party plaintiffs are entitled to "contribution" for damages, rather than indemnification.

**6.** At the February 23, 2005 hearing, Adelphia withdrew its opposition on standing grounds to proposed third-party defendant's Cross Motion for Intervention pursuant to 11 U.S.C. § 1109(b). *See* Tr. 11, l. 4–8.

The Third–Party Defendants maintain that the proposed third-party complaint fails to state a cause of action, and they controvert many of the factual allegations contained therein. For instance, Third–Party Defendants point out that although Ms. Mead is alleged to have dominated and controlled Devon, two of the members of the Management Committee were appointed by Adelphia,[7] and in practice no actions were ever taken without the unanimous consent of the Management Committee. The cash windfalls that Ms. Mead supposedly negotiated in breach of her fiduciary duties were never realized because the Second Amendment to the Partnership Agreement was never executed. In fact, Third–Party Defendants aver that the Second Amendment would have drastically reduced Devon G.P.'s potential profit share. Pursuant to the Major Decisions section of the Partnership Agreement, Devon could not grant a security interest or otherwise encumber partnership assets in excess of $1 million without the unanimous consent of both partners. This prevented Devon from obtaining financing from an outside lender without Adelphia's approval. This limitation on Devon G.P.'s ability to secure outside funding without Adelphia's consent essentially relinquished control of Devon's operations and decision making to Adelphia because it was the sole source of Devon's working capital, and Adelphia could terminate financial support at will. Although the $1 million cap on external financing was eventually increased to $ 5 million, in view of the fact that Devon needed $300 million to realize its business goals, the increase was *de minimus*. In May, 2002 Adelphia terminated its funding of Devon. At that time, Ms. Mead maintains that she and Devon G.P. sought out-

side funding to no avail and Devon filed a Chapter 11 bankruptcy in August, 2002.

The Third–Party Defendants state that (1) Adelphia lacks standing to assert the proposed cross claims (i.e. the third-party claims) and (2) each is without merit because Adelphia attempts to assert causes of action that are the exclusive property of the Liquidating Trust; (3) that Adelphia seeks contribution and indemnification on claims asserted against Adelphia based exclusively on Adelphia's alleged wrongful conduct; (4) the claim based upon alleged breach of fiduciary duty owed to Adelphia is entirely separate and independent from the claims asserted in this adversary proceeding and therefore cannot be maintained as a matter of law; and (5) that the proposed third-party complaint fails to allege any facts which would allow Adelphia to pierce the corporate veil of Devon G.P. and subject Ms. Mead to personal liability.

Third–Party Defendants maintain that Adelphia was an active participant in the Devon case and has filed claims therein and did not appeal the Confirmation order. It is Third–Party Defendants' position that Adelphia is bound by the Confirmation Order's terms, which assign all causes of action to the Liquidating Trust. Furthermore, Third–Party Defendants contend that the allegations in the third-party complaint, if proven, are all derivative claims that belong to the Liquidating Trust—that is, they all resulted in injury to the limited partnership, not the limited partner.

Adelphia filed a Reply Memorandum to the Cross Motion (the "Reply") which was partially devoted to its standing argument. As stated, Adelphia's objection on the basis of Third–Party Defendants' standing has since been withdrawn. *See* footnote 5, *supra*. The remainder of the Reply reit-

---

**7.** James Rigas had two votes on the management committee. *See* ¶ 17 of the proposed third-party complaint.

erates the arguments made in the Leave Motion and need not be discussed at length herein.

## DISCUSSION

### Standard on Leave to File a Third-party Complaint Pursuant to Fed.R.Civ.P. 14(a), Made Applicable to this Adversary Proceeding Through Fed. R. Bankr.P. 7014

■ The Adelphia Defendants failed to commence their third-party action within 10 days of service of the original answer,[8] and therefore leave of the Court is required before service of a third-party complaint may be accomplished. There are four factors relevant to the Court's determination of whether to grant leave to file a third-party complaint after the absolute right to implead has expired:

"(1) Whether the movant deliberately delayed or was derelict in filing the motion;

(2) Whether impleading would unduly delay or complicate the trial;

(3) Whether impleading would prejudice the third-party defendant; and

(4) Whether the third-party complaint states a claim upon which relief can be granted." *Nova Prod. v. Kisma Video,* 220 F.R.D. 238, 240–41 (S.D.N.Y.2004); *Southern Boston Mgmt Corp. v. BP Prod. North America, Inc.,* 2004 WL 2624891 at *3, 2004 U.S. Dist. Lexis 23349 at *10 (S.D.N.Y. Nov. 17, 2004);

*Too, Inc. v. Kohl's Dep't Stores, Inc.,* 213 F.R.D. 138, 140 (S.D.N.Y.2003).

■ Additionally, leave to implead should be granted "unless to do so would foster an obviously unmeritorious claim." *Nova Products, supra,* at 240–41. Furthermore, "the decision to permit a defending party to implead a third-party defendant rests in the trial court's discretion." *Id.* at 240; *see also Too, Inc., supra,* at 140 (The court has considerable discretion in deciding whether to permit a third-party complaint).

### Timeliness

■ The parties have made various arguments, including a compelling argument by Third–Party Defendants with regard to the prejudice that would accrue to the individual defendant if she were brought into this action at this stage in the proceeding, after discovery has commenced and in circumstances where it appears that a pitched battle may be fought as to discoverable documents.[9] The Court is also troubled that Adelphia has not offered any justification for its failure to file the third-party complaint within the ten-day period provided in Fed.R.Civ.P. 14. The Court has been given no basis for determining whether the motion was timely brought because the only statement made by Adelphia with regard to the timing of the third-party complaint was the following conclusory statement: "Defendants have been neither dilatory or (sic) derelict in bringing this motion. Since the

---

**8.** Fed.R.Civ.P. 14. Third–Party Practice (a) When Defendant May Bring in Third-party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. **The third-party plaintiff need not obtain leave to** **make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.** (emphasis supplied).

**9.** *See* Transcript of hearing held February 23, 2005 at p. 23–35.

filing of their Answer, Defendants have made a good faith effort to evaluate the merits of the proposed third-party action before bringing such action." *See* Leave Motion, ¶ 14. Adelphia filed their Answer on August 20, 2004. The Leave Motion was dated November 22, 2004, three months after the answer was filed. This is not a case in which discovery was necessary to identify possible third-party defendants. Adelphia was aware of the factual circumstances that form the basis for their third-party complaint in May, 2002 at the latest, when the Second Amendment was negotiated. All of the information necessary to file the third-party complaint was available to Adelphia on the date that the Answer was filed. The causes of action against the Third–Party Defendants are not complex or matters of first impression. The Court is not convinced that the failure to file the third-party complaint was anything other than Adelphia's dereliction. The term "derelict" means "neglectful of duty or obligation, remiss." *See* The American Heritage Dictionary of the English Language 489 (4th ed.2000). Adelphia was remiss in not filing their third-party complaint within the ten-day period and they have offered no good reason for the delay. The fact that the trial will not be pushed back because the third-party complaint was not filed within the ten days or that discovery is not complete in this matter are discrete factors to be considered separately from the timeliness issue under the prevailing standard. The timeliness issue is a distinct inquiry in the analysis and should not be treated as a mere formality, as evidenced by Fed.R.Civ.P. 14's directive to seek court approval after the expiration of the ten day time period. Adelphia has failed to show that it was not derelict in filing the complaint a full three months after expiration of the ten-day period prescribed by Fed.R.Civ.P. 14 and the Court finds that the third-party complaint is untimely.

### Standard for Determining Futility of Third-party Complaint

■ Another objection to the third-party complaint is that it fails to state a cause of action and is therefore futile. Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss. *See Nettis v. Levitt*, 241 F.3d 186, 194 (2d Cir.2001); *accord, Southern Boston Mgmt., supra*, at *2, 2004 U.S. Dist. Lexis 23349 at *6. Although in the context of a 12(b)(6) motion to dismiss, the court must treat all factual allegations in the complaint as true and draw all inferences in complainant's favor, *see Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir.2004), "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *See Vogt v. Greenmarine Holding, LLC*, 318 F.Supp.2d 136, 139 (S.D.N.Y.2004).

### A. Lisa–Gaye Shearing Mead's Individual Liability: The Veil Piercing Argument

■ Before the Court reaches the issue of liability on the contribution or indemnity theories, it is necessary to determine whether the corporate shield of Devon G.P., Inc. should be disregarded so that Ms. Mead, the sole shareholder of Devon G.P., could be held individually accountable for Devon G.P.'s alleged wrongdoing. Adelphia concedes that Devon G.P. is statutorily liable as general partner under Delaware Limited Liability Partnership Law and that the true object of the third-party complaint is to obtain a determination of Ms. Mead's accountability for the responsibilities of the corporate gener-

al partner.[10] Nonetheless, in order to hold Ms. Mead personally accountable Adelphia must allege facts that make out a *prima facie* veil piercing argument. An attempt to pierce the corporate veil is an assertion of facts and circumstances that will persuade the court to impose the corporate obligations on its owners, and is not a cause of action independent of that against the corporate general partner. *See Morris v. New York State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993).[11] The concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independently of its owners as a distinct legal entity and that the owners are normally not liable for the debts of the corporation. Therefore, the corporate form should not be lightly disregarded, *see New York Ass'n for Retarded Children, Inc. v. Keator*, 199 A.D.2d 921, 606 N.Y.S.2d 784, 785 (N.Y.App.Div.1993); *see also Puma Indus. Consulting, Inc. v. Daal Assoc., Inc.*, 808 F.2d 982, 986 (2d Cir.1987) (Courts generally are reluctant, under New York law, to pierce the corporate veil), and it is "well established that a corporation may be incorporated for the express purpose of limiting the liability of its shareholders." *See Miranda v. Smyrna Bldg. Corp.*, 180 Misc.2d 649, 693 N.Y.S.2d 382 (N.Y.Civ.Ct.1998), *citing Morris, supra* at 140, 603 N.Y.S.2d 807, 623 N.E.2d 1157. The policy behind the presumption of corporate independence

and limited shareholder liability is the encouragement of business development and the veil should only be pierced when the need to protect those dealing with the corporation outweighs this policy. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir.1991).

## I. *Veil Piercing Under New York Law*

New York courts have enunciated the following test for courts to consider when determining whether veil piercing is warranted:

"Generally ... piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff[12] which resulted in plaintiff's injury ... While complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required ..." *Morris, supra*, at 141–42, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (citations omitted). *See also InSITE Serv. Corp., LLC v. Am. Elec. Power Co., Inc.*,

---

**10.** *See* Transcript of hearing held February 23, 2005, at p. 6, l. 20–24.
The Court: Well, I guess I'm getting to the bottom line here. And to me, when I read all this, really the third-party complaint is about bringing Ms. Mead into this individually.
Ms. Willis (sic): Correct.
The Court: That's what this is really all about.
Ms. Willis: (sic): Correct, Your Honor. And I believe we have alleged facts sufficient to plead a prima facie case that she controlled (sic) G.P.

**11.** The parties agree that New York law controls the veil piercing argument as it relates to Ms. Mead's individual liability to Adelphia for contribution and indemnity. *See* Transcript of February 23, 2005 hearing, at p. 3, l. 14–16.

**12.** For purposes of applying this standard, the "plaintiff" would be the party seeking to pierce the corporate veil.

**522**

287 B.R. 79, 95 (Bankr.S.D.N.Y.2002) (Gropper, J.).

Thus the Court has examined the third-party complaint to determine whether Adelphia has alleged facts showing that Ms. Mead dominated and controlled Devon G.P. In so doing, the Court will not rely on repetition of the conclusory allegation that Ms. Mead "dominated and controlled" Devon G.P. by virtue of her position as sole shareholder and officer of the corporate general partner. Instead, the Court considers the authorities that provide guidance as to what constitutes indicia of domination and control such that the corporate veil should be pierced and in so doing scrutinizes the third-party complaint to determine whether any such indicia are alleged.

### a. *Domination and Control*

Corporations are inanimate, artificial entities that by necessity act through their officers, directors and agents. *See Commodity Futures Trading Comm. v. Weintraub*, 471 U.S. 343, 349–48, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *JP Morgan Chase Bank v. Winnick*, 350 F.Supp.2d 393, 399 (S.D.N.Y.2004). Because this is so, merely showing that an individual officer or director was charged with the "managerial responsibility with respect to operation of the business of the Partnership . . ." *see* third-party complaint ¶ 16, will not be sufficient to pierce the corporate veil. Instead, the domination and control must have been used improperly (i.e. for self-serving rather than corporate ends) to cause harm to the plaintiff. *Morris, supra,* at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157. In determining whether the party against whom veil piercing is alleged actually dominated and controlled the corporate entity, as opposed to merely carrying on the business of the corporation, the following factors have been considered:

"(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like,

(2) inadequate capitalization,

(3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes,

(4) overlap in ownership, officers, directors, and personnel,

(5) common office space, address and telephone numbers of corporate entities,

(6) the amount of business discretion displayed by the allegedly dominated corporation,

(7) whether the related corporations deal with the dominated corporation at arms length,

(8) whether the corporations are treated as independent profit centers,

(9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and

(10) whether the corporation in question had property that was used by other of the corporations as if it were its own." *Passalacqua Builders, supra,* at 139; *see also Miranda v. Smyrna Building Corp.,* 180 Misc.2d 649, 693 N.Y.S.2d 382, 385 (N.Y.Civ.Ct.1998)(These factors are to be considered in determining whether domination and control exists for purposes of piercing the corporate veil.).

The absence of these factors is not determinative, however, and the *Passalacqua* court and others have taken care to point out there are an "infinite variety of situations that might call for disregarding the corporate veil . . . and the key allegation . . . is [the use of] control . . . for [self-serving] purposes and to that extent the [corporation] had no separate purpose or existence . . . [additionally] control must

be demonstrated in respect to the transaction attacked ..." *InSITE, supra,* at 96.

The third-party complaint contains factual allegations only sufficient to show that Devon G.P. managed the business of Devon L.P., and that Ms. Mead was an officer of Devon G.P. Although Adelphia repeats its "domination and control" mantra multiple times in the third-party complaint, no facts have been alleged that invoke any of the ten factors provided in the *Passalacqua* case. The key allegation, in the absence of such factors, would be domination and control for self-serving purposes, coupled with an identity of existence. There has been no allegation that Mead used her "domination and control" over Devon G.P. for personal purposes to the exclusion of corporate interests, or that in approving or allowing the transfers that form the basis for the Complaint Ms. Mead used her alleged domination and control of the corporate general partner for personal purposes to the detriment of Adelphia. The third-party complaint instead advances facts that are consistent with an officer's responsibilities in carrying on the business of the limited corporation; i.e. that Devon G.P. and Ms. Mead approved and executed the Services Agreement pursuant to which the allegedly preferential, fraudulent and/or wrongful transfers were made; that all services performed by Adelphia were subject to Devon G.P.'s approval; that the ultimate responsibility for all of Devon's business operations, including those within the auspices of the service agreements, were allegedly preserved to Ms. Mead, and that Devon specifically kept ownership and control over all of its property. In the absence of the *Passalacqua* factors, Adelphia would have to make a further showing than that Ms. Mead, through Devon G.P., directed the business activities of Devon. Adelphia would have to also show that Ms. Mead misused her power to personally benefit herself or Devon G.P. to the detriment of proposed third-party plaintiff.

b. *Personal v. Corporate Ends*

■ "Under New York law it has been further held that when a corporation is used by an individual to accomplish his own and not the corporation's business, such a controlling shareholder may be held liable for the corporation's commercial dealings as well as for its negligent acts. Where there is proof that defendants were doing business in their individual capacities to suit their own ends—shuttling their own funds in and out without regard to the corporation's form—this sort of activity exceeds the limits of the privilege of doing business in a corporate form and warrants the imposition of liability on individual stockholders. The critical question is whether the corporation is a shell being used by the individual shareowners to advance their own purely personal rather than corporate ends." *Passalacqua, supra,* at 138; *see also Cary Oil Co., Inc. v. MG Refining & Mktg., Inc.,* 230 F.Supp.2d 439, 489 (S.D.N.Y.2002) (distinguishing between veil piercing cases asserted against individual owners and those asserted against corporate entities); *Ansonia Assoc. Ltd. v. Quik Park Ansonia Garage Corp.,* 259 A.D.2d 308, 686 N.Y.S.2d 418, 419 (N.Y.App.Div. 1999) (action for veil piercing asserted against individual defendant properly dismissed where no evidence existed that individual defendant used the debtor corporation for purely personal rather than corporate ends).

With these authorities as background, the proposed third-party complaint is notable for what it does not allege. It does not allege a disregard of corporate formalities between Ms. Mead and Devon G.P. It does not state that Ms. Mead used Devon G.P. for purely personal, rather than corporate,

ends. It does not allege that Ms. Mead put personal funds through Devon LP. Rather, the factual allegations contained in the proposed third-party complaint make conclusory statements that Ms. Mead exercised "domination and control" which in fact were actions of a managerial nature; that is, the allegations state that pursuant to the terms of the Devon Limited Partnership Agreement, which terms are expressly enunciated therein, the authority to direct the business decisions of Devon were granted to Devon G.P., and, by virtue of her position as owner and officer of Devon G.P., Ms. Mead. The facts and circumstances alleged in third-party complaint, which the Court treats as true while drawing all reasonable inferences in Adelphia's favor for purposes of the Leave Motion, do not show the sort of improper domination and control contemplated by New York Law as predicate for a court to pierce the corporate veil.

■ There is a single instance of attempted self-dealing alleged in the third-party complaint. The proposed third-party complaint alleges that Ms. Mead sought a self-serving amendment to the Devon L.P. Agreement, (the "Second Amendment"), which would have provided her with cash windfalls. As stated, this is the only allegation of self-dealing made by Adelphia with respect to Ms. Mead's alleged domination and control of Devon G.P. The proposed third-party complaint acknowledges, however, that the Second Amendment was never executed by Adelphia. The negotiation of the self-serving amendment to the Limited Partnership Agreement has no connection with the

transactions in the primary complaint in the adversary proceeding. Control must be demonstrated with respect to *the transaction attacked that caused the plaintiff's harm* for veil piercing to be warranted. *See, e.g., Morris, supra; see also InSITE, supra,* at 96 (Bankr.S.D.N.Y.2002) (emphasis supplied). The events for which Adelphia is claiming damages, i.e. an entitlement to indemnity and contribution, occurred on or before February, 2002.[13] The negotiation of the Second Amendment did not occur until May 2002. *See* third-party complaint, ¶¶ 22–23. Additionally, the Court notes that because the amendment was never executed, no funds were expended in reliance upon its terms. Therefore, Ms. Mead could not have personally benefited from the negotiation of the Second Amendment.

Furthermore, although Adelphia alleges it is entitled to contribution and indemnity for events complained of by the Liquidating Trust, it predicates its veil piercing argument in part on self-dealing by Ms. Mead, i.e. her negotiation of the Second Amendment, which has no relation to the events for which contribution and indemnity are allegedly owed. The wrongdoing upon which veil piercing is alleged would have to be related to the transactions that caused the harm, i.e. the transfers, the deepening insolvency and breaches of agreement claims. Adelphia cannot just pick a random instance of alleged self-dealing as a basis for veil piercing because New York law requires that domination and control be exercised with respect to the transactions that caused the harm.

---

13. The following transfers are alleged in the Complaint to be fraudulent conveyances made to Adelphia or its subsidiaries: January 27, 1997—$2,511,674.30; August 3, 2001—$2,850,000.00; August 10, 2001—$32,785,000.00; August 30, 2001—$ 975,-000.00; October 4, 2001—$13,640,000.00; October 26, 2001—$ 40,000.00; November 23, 2001—$ 20,000.00; December 7, 2001—$ 130,000.00; February 20, 2002-$ 95,-000.00. The Complaint also seeks to avoid an alleged preferential transfer of $22,151,821.32 made on February 7, 2002.

The harm alleged by the contribution claim is the potential for paying a disproportionate share of damages for liability which Adelphia maintains should be apportioned in part to Devon G.P. and Mead. *See Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 259, 460 N.Y.S.2d 774, 447 N.E.2d 717 (1983) ("Principals allowing apportionment among tortfeasors reflect the important policy that responsibility for damages to an injured person should be borne by those parties responsible for the injury, in proportion to their respective degrees of fault."). The wrongful acts (i.e. transfers) for which contribution is allegedly owed in this case occurred months and even years prior to the negotiation of the Second Amendment upon which the veil piercing argument is predicated and the amendment is therefore not related to those transactions at issue in the main Complaint. Thus, the self-serving amendment cannot be the basis to pierce the corporate veil to reach Ms. Mead on an individual basis.

c. *Harm to Plaintiff*

 Even if the Court determined that Ms. Mead exercised domination and control over Devon G.P., which it does not, such a finding, standing alone, is insufficient to pierce the corporate veil, *see Morris, supra*, at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157. Rather, an additional showing of wrongdoing **toward the plaintiff** must also be established before the Court will disregard the corporate shield, *id.* at 142, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (emphasis supplied), *see also Aetna Elec. Distrib. Co. v. Homestead Elec., Ltd.*, 279 A.D.2d 541, 719 N.Y.S.2d 668, 669 (N.Y.App.Div.2001) (plaintiff failed to prove that defendant used his alleged domination and control to commit a fraud or wrong *against plaintiff*, and thus summary judgment was appropriate) (emphasis supplied). Furthermore, the domination and control must have been exercised to implement the transaction that caused the injury the plaintiff. *See InSITE, supra*, at 96; *Morris, supra*, at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157; *Aetna, supra*, at 669. The wrongdoing in which Ms. Mead allegedly personally participated and for which indemnification and contribution are sought, i.e. the fund transfers, deepening insolvency, and breaches of the various agreements, was not wrongdoing in contravention of the rights of the **proposed third-party-plaintiff** Adelphia; the party harmed by those transactions was Devon L.P. Devon L.P. is missing the money and Adelphia allegedly received it, but no one maintains that Ms. Mead or Devon G.P. received any of the transfers.[14] The causes of action in the proposed third-party complaint seek contribution and indemnity **for wrong alleged to have been caused to Devon L.P.** and for which the Liquidating Trust is seeking damages from Adelphia. Adelphia's damages, if any, will not be (i.e. if liable in this adversary proceeding) caused by wrongdoing against Adelphia on Ms. Mead's part; but rather, by their own actions in initiating transfers and/or receiving the funds. Even if a determination were made that Ms. Mead was jointly liable on a contribution theory, the harm was caused to Devon, NOT Adelphia. The theory of recovery for a contribution claim is apportionment between two or more wrongdoers for harm **done to a**

---

14. At oral argument before Judge Gerber, counsel for Adelphia stated that "we may even find out that she got some of the transfers; we don't know that yet." *See* December 15, 2004 Hearing Transcript, at p. 109, l. 7–9. Adelphia therefore concedes that they cannot make an allegation at present that third-party defendants received any fraudulent or preferential transfers.

***third-party.*** *See Frazer Exton Dev., LP v. Kemper Envtl. Ltd.*, 2004 WL 1752580 at *13 (S.D.N.Y. July 29, 2004), *citing Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 141 (S.D.N.Y.2003). If and when Adelphia actually paid a judgment for which Devon G.P. was liable, a possible argument for veil piercing might be made by a contributing wrongdoer, if other factual indicators existed. In light of the strong preference in favor of limiting shareholder liability in New York State, however, the party seeking to bypass corporate formalities would have to actually have paid a portion of a judgment that was properly the liability of the shareholder before a contribution claim could be the foundation for a veil piercing argument. *See Calcutti v. SBU, Inc.*, 273 F.Supp.2d 488, 497 (S.D.N.Y.2003)(cause of action for contribution does not accrue until payment on judgment is made). The need to protect those who deal with the corporation may at that point outweigh the policy of limited liability for shareholders. *See Passalacqua, supra*, at 139.

d. *Standing to Assert Breach of Fiduciary Duty*

 Another harm alleged to be a basis for veil piercing is an alleged breach of fiduciary duty. To the extent that Adelphia claims to be damaged as a result of the diminution of their partnership interest based on the transfers complained of by the Liquidating Trust, quite apart from the failure of such allegations to pass the "straight face" test as the Adelphia defendants were the recipients of the transfers which are claimed to have harmed Devon, such a claim would be purely derivative and accrue to the Liquidating Trust. "Where a corporation suffers an injury, and the shareholders suffer solely through a diminution in the value of their stock, the claim belongs to the corporation. Where, however, the third-party's wrong inflicts an injury on stockholder's rights rather than on the corporation, the stockholder may seek direct relief in its own favor against the third-party. This can occur in two situations: where the allegedly wrongful conduct violates a separate duty to the complaining shareholder ***independent of the fiduciary duties*** that the wrongdoer owes to all of the shareholders, or where the conduct causes an injury to the plaintiff distinct from any injury to the corporation." *See In re Granite Partners*, 194 B.R. 318, 325 (Bankr.S.D.N.Y.1996)(Bernstein, J.) (citations omitted)(emphasis supplied). In connection with the two related counts contained in the third-party complaint, no wrongdoing independent of the breach of the fiduciary duty owed to the limited partnership or the limited partner by Ms. Mead and Devon G.P. is complained of by Adelphia; i.e. Adelphia does not allege that Ms. Mead or Devon G.P. received any of the allegedly wrongful transfers. Rather, it is Adelphia's contention that Ms. Mead used her domination and control of Devon G.P. in breach of her fiduciary duties by allowing or authorizing the transfers to Adelphia, and that those fiduciary duty breaches make Ms. Mead personally liable for damages assessed against Adelphia in connection with the Complaint. However, the *Granite* decision indicates that in order to maintain a direct action against corporate insiders, the wrong alleged must be independent of the fiduciary duty owed to all shareholders, or in this instance, limited partners. The claim for breach of fiduciary duty therefore belongs to the Liquidating Trust and cannot be asserted by Adelphia as a predicate for piercing the corporate veil.

**B. Indemnity and Contribution under New York State Law**

**I.** *Indemnity*

 It is well settled that absent an express indemnification agreement, im-

plied indemnification is appropriate only in the context of vicarious liability. "... [I]ndemnity is allowed where the party seeking indemnity is not personally at fault and did not actually contribute to the injury, but was held liable to the plaintiff only vicariously ..." *Jordan v. Madison Leasing Co.*, 596 F.Supp. 707, 709 (S.D.N.Y.1984). Where the alleged indemnitee's own wrongdoing contributed to the injury suffered, indemnity will not lie. *See Tr. of Columbia Univ. v. Mitchell/Giurgola*, 109 A.D.2d 449, 453, 492 N.Y.S.2d 371 (N.Y.App.Div.1985) ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.")(emphasis supplied); see also *Jordan, supra*, at 709 (third-party plaintiffs not entitled to indemnification where the claims asserted against them were based upon their own acts or omissions).

In the proposed third-party complaint, Adelphia alleges that the Third–Party Defendants "personally participated in the wrongs which form the basis of the underlying adversary proceeding." More than mere participation is necessary; Third–Party Defendants would have to be the sole wrongdoers and Adelphia vicariously liable for their wrongdoing, as in the insured/insurer situation, for common law indemnity to apply. The adversary proceeding alleges specific wrongdoing by Adelphia in the transfer of funds and failure to perform under agreements. The thrust of the allegations in the third-party complaint is that Third–Party Defendants authorized or agreed to the transfers to Adelphia. Because Adelphia is alleged to have participated in the wrongdoing in the main action, and there is no allegation in the third-party complaint that Third–Party Defendants were the sole wrongdoers, as opposed to being co-participants in the alleged wrongdoing, the third-party complaint fails to state a cause of action for indemnity as a matter of law. *See Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 144 (S.D.N.Y.2003) (third-party claim for indemnity not permitted where it was "highly unlikely" third-party plaintiffs would be found blameless).[15]

## II. *Contribution*

▉▉▉▉ Nor can a contribution claim be made in this action. "The critical requirement for apportionment by contribution under CPLR article 14 is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought. Thus, contribution is available whether or not the culpable parties are allegedly liable for the injury under the same or different theories, and the remedy may be invoked against concurrent, successive, independent, alternative and even intentional tortfeasors ..." *See Raquet v. Braun*, 90 N.Y.2d 177, 183, 659 N.Y.S.2d

15. Adelphia's reliance on *Mas v. Two Bridges Assoc.*, 75 N.Y.2d 680, 686–88, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990), is misplaced. In that case, the owner of an apartment building was guilty of primary negligence on a separate theory of liability than that for which indemnification was sought, and thus, the wrongdoing that was alleged to bar indemnification was related to a separate cause of action altogether. The owner in that case had breached his non-delegable duty to inspect an elevator, but the Court also held that the landlord was entitled to indemnification on another count from the elevator maintenance company that had voluntarily assumed responsibility for upkeep of the elevator that caused the injury. The *Mas* case is obviously factually distinguishable from the instant matter, as there are no separate counts in the Complaint for which Adelphia can claim to be only vicariously liable.

237, 681 N.E.2d 404 (1997). "An action over for contribution will not lie unless all of the essential elements of a cause of action against the proposed contributor can be made out." *Jordan, supra,* at 710. "The potential liability for contribution stems from the common law doctrine that one who knowingly participates or furthers a tortuous act is jointly and severally liable with the prime tortfeasor ...." *Too, Inc. v. Kohl's Dep't Stores, Inc.,* 213 F.R.D. 138, 141 (S.D.N.Y.2003) (citations omitted)(emphasis supplied).

The heart of the contribution claims against the Third–Party Defendants is that they participated in the alleged "wrongdoing" by authorizing or approving the transfers at issue in breach of their fiduciary duties.[16] At oral argument, counsel for Adelphia clarified that Adelphia's belief is that Ms. Mead dominated and controlled Devon and that she must therefore have authorized the transfers to Adelphia, and to the extent that Third–Party Defendants approved these transfers, they are liable on all causes of action equally with Adelphia. See Transcript of December 15, 2004 oral argument ("Tr."), at p. 115, L. 11–24. "To the extent that we're looking at the contribution and indemnification claims, those are all based—first of all, we pled, certainly, domination and control by Lisa Gay[e] Shearing–Mead and I don't think that's contested. And to the extent that as general partner, through her domination and control, she approved it and authorized or even permitted the transfers or deepening insolvency, then she would, based on her responsibilities under the partnership as the general partner, be lia-

ble on all of the causes of action that have been brought against Adelphia."

The contribution claim alleged in the third-party complaint states that Devon G.P. and Ms. Mead owed fiduciary duties to the limited partnership and its limited partner, Adelphia G.P. Adelphia is not claiming that each element of each cause of action contained in the Complaint can be made out against Devon G.P.; rather, Adelphia is seeking contribution on a separate theory of liability—Devon G.P.'s breach of fiduciary duty owed to the limited partnership and to the limited partner, Adelphia. Pursuant to the *Raquet* and *Jordan* cases, *supra,* Adelphia argues that if it shows that Third–Party Defendants contributed to the harm alleged in the Complaint on any theory of liability, they are entitled to contribution from the Third–Party Defendants. As stated, the theory of liability they rely on in third-party complaint is Third–Party Defendants' breach of fiduciary duty to the limited partnership and the limited partner.

 Inasmuch as the third-party complaint alleges a cause of action for contribution based on the general partner's breach of fiduciary duty to the limited partnership, the limited partner is without standing. In the *Granite* case, *supra,* at 334, the Court held that a claim against the partnership's insiders for breach of fiduciary duty belonged to the limited partnership, and could not be alleged as a direct action in a third-party complaint "under the guise of claims for contribution and indemnity." Although the *Granite* case was somewhat factually different, in

---

16. Ms. Wills: So to the extent that Devon G.P. and Lisa Gay (sic) Shering (sic) Mead permitted or authorized any of those transfers which are alleged to be wrong, wrongful, then they breached their fiduciary duty to the partnership, and to the limited partner at that time in permitting wrongful transfers to be

made in breach of either of those agreements. So we believe that clearly we are entitled to contribution with respect to all of those counts of the complaint.

*See* Transcript of the February 23, 2005 hearing, p. 5, l. 8–18.

that creditors,[17] and not a limited partner, were seeking contribution from the partnership insiders for breach of fiduciary duties, the underlying legal premise still applies—only the corporation, or in the bankruptcy context, the Trustee (or the Liquidating Trust in this instance) has standing to allege breach of fiduciary duty claims. *See also In re Keene*, 164 B.R. 844, 853–54 (Bankr.S.D.N.Y.1994). This standing requirement cannot be circumvented by the expedient of filing a third-party complaint and denominating the breach of fiduciary claims as claims for contribution and indemnity. This would elevate form over substance. "To determine standing, the court must look to the nature of the wrongs alleged in the complaint without regard to the plaintiff's designation, and the nature of the injury for which relief is sought." *Granite, supra,* at 325 (citations omitted). The nature of the wrongs alleged are breach of fiduciary duty to the limited partnership which diminished the value of the limited partner's interest in the limited partnership, which is a classically derivative, breach of fiduciary duty claim, and not, as Adelphia maintains, a *prima facie* case of contribution under New York law.

▮▮▮▮▮ Interestingly enough, Adelphia appears to allege that to the extent the Third–Party Defendants authorized and permitted the wrongful transfers, this was a breach of fiduciary duty to the *limited partner,* as well as the limited partnership, and thus Adelphia argues it can maintain a cause of action for contribution on the basis of that alleged breach. The third-party complaint does not explicitly provide how a breach of fiduciary duty owed to the limited partner somehow contributed to the harm caused to the limited partnership. Again, it is Adelphia who is alleged to have received the transfers at issue, and it is a curious argument to make that payment to the limited partner somehow breached an obligation to that same partner. There is no allegation that Devon G.P. received any of the transfers at issue. The limited partner was not the party harmed by the transfers save in the diminution of their partnership interest; and to the extent that they maybe held liable for that harm they are alleged to have caused and are made to return funds determined to properly go to Devon's creditors, they cannot state that Devon G.P.'s failure to prevent them from causing harm is the basis for a claim for breach of fiduciary duty owed to it as the limited partner.[18] If the harm alleged is that the value of the limited partnership is diminished, as discussed, *supra,* this claim belongs to the Liquidating Trust.

## C. The Independent Breach of Fiduciary Duty Claim under Wallace

▮▮▮▮▮ Adelphia also alleges that Devon G.P. and Ms. Mead owed an indepen-

17. Corporate insiders owe creditors fiduciary duties when the corporation is in the vicinity of insolvency. *Pereira v. Cogan*, 294 B.R. 449, 519 (S.D.N.Y.2003).

18. Third Party Defendants have raised the doctrine of *in pari delicto* as a possible defense to the third-party complaint. The phrase *in pari delicto*, which means "in equal fault," is derived from the axiom *"in pari delicto potior est conditio possidentis [defenditis],"* defined by Black's Law Dictionary as follows: "In a case of equal or mutual fault [between two parties] the condition of the party in possession [or defending] is the better one." BLACK'S LAW DICTIONARY 791 (6th ed.1990). The defense is inapplicable in this matter because the cause of action is brought against an insider. *See KDI Specialty Foods v. Austin Fin. Serv., Inc. (In re KDI Holdings, Inc.),* 277 B.R. 493, 518 (Bankr.S.D.N.Y. 1999) (Gonzales, J.) (stating that an *in pari delicto* defense may bar claims against third parties, but not against corporate insiders or partners).

dent fiduciary duty to it as a the limited partner. "Unquestionably, the general partner of a limited partnership owes direct fiduciary duties to the partnership and to its limited partners ... under certain circumstances, directors of a corporate general partner likewise may owe fiduciary duties to the partnership and to the limited partners [including] the duty not to use control over the partnership's property to advantage the corporate director at the expense of the partnership ..." *Wallace v. Wood,* 752 A.2d 1175, 1180–81 (Del.Ch. 1999).

The Court assumes this duty existed for the purposes of deciding whether the third-party complaint should be permitted. The corporate general partner's officer may have had fiduciary duties to the limited partner, but that cause of action is admittedly unrelated to the events complained of in this adversary proceeding. The breach of fiduciary duty to the limited partnership is an independent cause of action that can only be heard in the context of this adversary proceeding if the third-party claims for contribution and indemnity are allowed.[19] See Fed. R. Bank. P. 7018, supra footnote 4.

The breach of a fiduciary duty claim is unrelated to the Liquidating Trust's Complaint. Therefore, as the other two causes of action are insufficient, leave to file the third-party complaint must be denied.

## CONCLUSION

For the foregoing reasons, Adelphia's Motion for Leave to File a Third–Party Complaint is denied. Proposed Third–Party Defendants are instructed to submit an order consistent with this memorandum decision.

---

**19.** Adelphia concedes that its third cause of action can only be maintained in this adversary proceeding as a third-party claim if the contribution and indemnity claims are allowed. *See also* December 15, 2003 Tr. at p. 113, l. 3–8. "You have to have contribution and indemnification and then you would join the independent beach of fiduciary duty claims. Yes, that's actually how Rule 18 goes."