OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 Petitioner, a New Jersey resident who maintained a rented apartment in New York, was the president of Sunshine Developers, Inc. (Sunshine), a closely held corporation owned en
 
 *138
 
 tirely by his brother and his nephew. Respondent New York State Department of Taxation and Finance (the Department) assessed a compensating use tax against petitioner for two cabin cruisers purchased by the corporation outside of New York and allegedly used by him on his individual business in State waters. Although owning no stock in Sunshine, petitioner assertedly controlled the corporation and his responsibility for the tax has been upheld by disregarding the separate corporate entity under the doctrine of piercing the corporate veil. Because of his leasing a New York apartment, it has been held that petitioner, although a New Jersey resident, could not claim the nonresident’s exemption from the tax
 
 (see,
 
 Tax Law § 1118 [2]). On his appeal, the decisive question is whether the Tax Appeals Tribunal and Appellate Division properly sustained the assessment against petitioner on the theory of piercing the corporate veil. For reasons to be explained, we conclude that, on the facts in this record, that theory should not have been applied. We, therefore, reverse.
 

 I
 

 The pertinent facts may be summarized from the determinations of the Administrative Law Judge of the Division of Tax Appeals and of the Tax Appeals Tribunal. Sunshine was a company with offices in New Jersey incorporated in Delaware in 1977 for the purpose of purchasing, owning, operating and leasing boats. Petitioner’s brother, Robert Morris, was the majority shareholder and acted as Sunshine’s secretary-treasurer; petitioner’s nephew Drew, 14 years old at the time of incorporation, was the other shareholder. Robert Morris knew little about the assets or business activities of the corporation and did not participate in business decisions. As the sole board member, petitioner acted as chair and board secretary and made all corporate decisions. Petitioner had been a resident of New Jersey since 1980; from 1977 until 1984 he rented an apartment in New York City for the rare occasion when he stayed in New York overnight for business reasons.
 

 In 1977 and in 1978 Sunshine purchased, owned, and operated at different times its primary assets, two boats ("the 1977 boat” and "the 1978 boat”), which it leased for the purpose of business entertainment to other companies owned by petitioner and Robert Morris. In October 1982, the Department assessed sales and use taxes against Sunshine for the purchase and use of these boats
 
 (see, Matter of Sunshine Developers v
 
 
 *139
 

 Tax Commn.,
 
 132 AD2d 752,
 
 lv denied
 
 70 NY2d 609). On appeal, an Administrative Law Judge (AU), finding delivery of the boats to have occurred outside of New York, cancelled all sales tax assessments as well as the use tax on the 1977 boat, which had been used only infrequently in New York. The AU sustained the use tax on the 1978 boat, however. The Appellate Division upheld the tax, concluding that the 1978 boat "was seasonally moored, and therefore used, in New York. These facts support [the Department’s] further conclusion that petitioners [including Sunshine] were engaged in carrying on a business in this State and, thus, not entitled to the exemption for nonresidents”
 
 (id.,
 
 at 754-755). The use tax assessed on the 1978 boat was paid to the Department.
 

 The corporation subsequently sold these assets, and from June 1981 through August 1984 it purchased, owned and operated at different times two other boats ("the 1981 boat” and "the 1984 boat”). The corporation bought them following special board meetings at which petitioner, sitting as sole board member, authorized the purchases. Both boats were picked up by petitioner in North Carolina. And both boats were moored during the summer months at Montauk, New York.
 

 In April 1985, the Department sent a notice of determination of sales and use taxes due on the 1981 and 1984 boats in the amount of $76,390, plus interest and penalties, to petitioner, Robert Morris and Sunshine. The Department’s action was based upon the mooring of the 1981 and 1984 boats at Montauk as well as on the allegation that Sunshine was a corporate resident of New York. On appeal, it was claimed that no sales tax was due as Sunshine was exempt from the use tax as a nonresident corporation. In May 1990, an AU concluded: (1) that Sunshine was entitled to the nonresident exemption pursuant to Tax Law § 1118 (2); and (2) that, notwithstanding the Department’s contentions, the corporate veil should not be pierced to impose personal liability for the taxes upon either petitioner or Robert Morris. In 1988, the sales and use tax on the 1981 boat was paid to the New Jersey Department of the Treasury.
 

 The Department appealed to respondent Tax Appeals Tribunal (the Tribunal). In May 1991, the Tribunal sustained the AU’s determination of no imposition of sales or use taxes upon Sunshine, concluding that Sunshine was a nonresident corporation, which did no business in New York; it also
 
 *140
 
 sustained, the determination pertaining to Robert Morris that he had insufficient control of Sunshine to justify piercing the corporate veil. But the Tribunal reversed as to petitioner Joseph Morris and pierced the corporate veil, concluding that he was the equitable owner and controlling principal of Sunshine and therefore personally liable for the tax. The Tribunal also held that petitioner Joseph Morris did not qualify for the nonresident tax exemption due to his rental of a New York City apartment when the 1981 and 1984 boats were purchased. The Tribunal modified the total amount of tax assessed against him to reflect a credit for the sales and use tax paid to the State of New Jersey on the 1981 boat.
 

 Petitioner commenced a CPLR article 78 proceeding in the Appellate Division to review the Tribunal’s determination. The Appellate Division sustained all of the Tribunal’s conclusions, relieving Sunshine and Robert Morris of any liability and holding "that there is substantial evidence to support the Tribunal’s decision to impute equitable ownership, and the resulting liability for the tax assessed, to petitioner”
 
 (Matter of Morris v New York State Dept. of Taxation & Fin.,
 
 183 AD2d 5, 8). We granted petitioner leave to appeal and now reverse.
 

 II
 

 In
 
 Walkovszky v Carlton
 
 (18 NY2d 414), we stated the general rule that:
 

 "Broadly speaking, the courts will disregard the corporate form, or, to use accepted terminology, 'pierce the corporate veil’, whenever necessary 'to prevent fraud or to achieve equity’.
 
 (International Aircraft Trading Co.
 
 v.
 
 Manufacturers Trust Co.,
 
 297 N. Y. 285, 292.)”
 
 (Id.,
 
 at 417.)
 

 The concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners
 
 (see, Bartle v Home Owners Coop.,
 
 309 NY 103, 106;
 
 Rapid Tr. Subway Constr. Co. v City of New York,
 
 259 NY 472, 487-488; Presser, Piercing the Corporate Veil § 1.01, at 1-4 — 1-5).
 

 The doctrine of piercing the corporate veil is typically
 
 *141
 
 employed by a third party
 
 *
 
 seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation
 
 (see, e.g., Billy v Consolidated Mach. Tool Corp.,
 
 51 NY2d 152;
 
 Port Chester Elec. Constr. Corp. v Atlas,
 
 40 NY2d 652;
 
 Walkovszky v Carlton, supra; Bartle v Home Owners Coop., supra).
 
 The concept is equitable in nature and assumes that the corporation itself is liable for the obligation sought to be imposed
 
 (see,
 
 1 Fletcher, Cyclopedia of Private Corporations § 41, at 603 [perm ed]). Thus, an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners
 
 (see, id.,
 
 at 602-603).
 

 Because a decision whether to pierce the corporate veil in a given instance will necessarily depend on the attendant facts and equities, the New York cases may not be reduced to definitive rules governing the varying circumstances when the power may be exercised
 
 (see,
 
 Presser, Piercing the Corporate Veil § 2.33 [1], at 2-291 — 2-293). Generally, however, piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiffs injury
 
 (see, Matter of Guptill Holding Corp. v State of New York,
 
 33 AD2d 362, 364-365,
 
 affd
 
 31 NY2d 897;
 
 Lowendahl v Baltimore & Ohio R. R. Co.,
 
 247 App Div 144, 157,
 
 affd
 
 272 NY 360;
 
 American Protein Corp. v AB Volvo,
 
 844 F2d 56, 60 [2d Cir 1988] [analyzing New York law and citing
 
 Lowendahl (supra)]; International Aircraft Trading Co. v Manufacturers Trust Co.,
 
 297 NY 285, 292;
 
 see generally,
 
 Presser, Piercing the Corporate Veil § 2.33 [3], at 2-304 — 2-313).
 

 While complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business
 
 (see, Walkovszky, supra,
 
 at 417), such domination, standing alone, is not enough; some
 
 *142
 
 showing of a wrongful or unjust act toward plaintiff is required
 
 (see, Guptill, supra,
 
 at 365;
 
 Lowendahl, supra,
 
 at 157;
 
 Passalacqua Bldrs. v Resnick Developers S.,
 
 933 F2d 131, 138 [2d Cir 1991] [applying New York law];
 
 see generally,
 
 18 Am Jur 2d, Corporations, § 51). The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene
 
 (see, Guptill, supra,
 
 at 365;
 
 National Labor Relations Bd. v Greater Kan. City Roofing,
 
 2 F3d 1047, 1052-1053).
 

 Ill
 

 In deciding whether respondents have established a sufficient basis for piercing the corporate veil under these general rules, we first address the element of petitioner’s control of the corporation. Because petitioner was not a stockholder of Sunshine, he argues that, as a matter of law, he was not in a position to exercise the necessary domination of the corporation
 
 (see,
 
 1 O’Neal and Thompson, O’Neal’s Close Corporations § 1.10, ch 1, at 47 [3d ed], for the proposition that almost all of the cases dealing with the issue of piercing the corporate veil involve control by a stockholder or stockholders of closely held corporations). Respondents contend, nevertheless, that Joseph Morris, although not a stockholder — through his status as Sunshine’s president and its only director and his close relationship with his brother and nephew, the only stockholders— was in a position to and did dominate the corporation with respect to the transactions at issue
 
 (see, Lowendahl, supra,
 
 at 157). The Appellate Division accepted this argument, holding: "we perceive that we should be concerned with 'reality and not form [and] with how the corporation operated and [petitioner’s] relationship to that operation’ [citation omitted]”
 
 (Matter of Morris v New York State Dept. of Taxation & Fin.,
 
 183 AD2d 5, 8,
 
 supra).
 

 We have found no definitive authority on the issue of whether a nonshareholder could be personally liable under a theory of piercing the corporate veil
 
 (but see, Establissement Tomis v Shearson Hayden Stone,
 
 459 F Supp 1355, 1366, n 13 [declining to hold, as a matter of law, that defendant, a nonshareholder and president of a corporation wholly owned by his wife, could not be held responsible for a corporate obligation]). It is not necessary to decide the question, how
 
 *143
 
 ever, because respondents fell far short of meeting their burden on the second critical point: that petitioner, through his domination, misused the corporate form for his personal ends so as to commit a wrong or injustice on the taxing authorities of New York State
 
 (see, Guptill, supra,
 
 at 364-365;
 
 Lowendahl, supra,
 
 at 157). The specific finding of the AXJ that there is no indication of "fraud or wrongdoing” on the part of petitioner or the corporation, it must be noted, was not disturbed on review by either the Tax Appeals Tribunal or the Appellate Division. But, respondents maintain that
 
 there was
 
 wrongful conduct in any event and characterize the purchase of the boats by Sunshine as part of an illicit scheme to use the corporation to avoid New York taxes. We disagree.
 

 There is no contention that there was anything improper in the formation of Sunshine for the stated purpose of purchasing, owning and leasing boats. Sunshine, it appears, in the early years after its incorporation, carried on its stated business; the very basis of the Department’s successful 1982 assessment of the use tax against Sunshine for the 1978 boat was that the corporation
 
 was conducting its business
 
 within the State of New York — i.e., buying boats and chartering them to businesses for entertaining clients
 
 (see, Sunshine Developers, supra).
 

 Indeed, as in the 1982 assessment, the Department initially argued that Sunshine was liable for the current assessment because of its business presence in New York. However, once the ALJ and the Tribunal determined in this proceeding that Sunshine was a nonresident corporation and
 
 not engaged in business in New York
 
 and, therefore, entitled to the nonresident exemption on the 1981 and 1984 boats
 
 (see, Matter of Sunshine Developers,
 
 1990 NY Tax LEXIS 183 [State of NY Div of Tax Appeals, May 3, 1990];
 
 Matter of Sunshine Developers,
 
 1991 NY Tax LEXIS 267 [Tax Appeals Tribunal, May 2, 1991]), respondents abandoned that course and took a different tack. They now claim that in doing no business during the period when the 1981 and 1984 boats were purchased, Sunshine must have operated solely as a sham to do the personal business of petitioner. They further argue that, because Sunshine was a sham, it existed solely for the purpose of avoiding taxes due on its asset.
 

 However, there is no evidence of an intent to defraud by using the corporation as a tax shield. The corporation, not petitioner, purchased and owned the boats. There is no sugges
 
 *144
 
 tian that any obligations of the corporation remained unpaid, including use taxes found to be due in New York. There is no reason to believe that if respondents had succeeded in their current assessment against the corporation on the 1984 boat, as they had in their 1982 assessment, Sunshine would not have paid the tax. That the Tribunal sustained the nonresident tax exemption for Sunshine on the 1984 purchase and declined to sustain it as to petitioner does not give rise to a claim of fraud or wrongdoing by petitioner.
 

 Finally, there is a fundamental problem with respondents’ claim that petitioner has somehow perverted the protective benefits of the corporate privilege to commit a wrong against respondents. This is not the usual case where a third party seeks .to impose a corporate obligation on a controlling owner by penetrating the shield of limited liability. Quite the contrary. Here, there was no corporate obligation for respondents to impose. Sunshine, it has been determined,
 
 was entitled to the nonresident exemption
 
 for the 1984 boat and owes nothing. Thus, the claim against petitioner cannot be for what the corporation owed. Respondents, nevertheless, seek to collect the tax directly from petitioner because, unlike Sunshine, he maintained a rental apartment in New York and assertedly was deprived of his nonresident exemption. But, to pursue petitioner under the doctrine of piercing the corporate veil presupposes that "the corporation is liable” (1 Fletcher, Cyclopedia of Private Corporations § 41, at 603 [perm ed];
 
 see, e.g., National Labor Relations Bd. v Greater Kan. City Roofing,
 
 2 F3d 1047, 1051,
 
 supra; Transamerica Cash Reserve v Dixie Power & Water,
 
 789 P2d 24, 26 [Utah];
 
 Anderson v Durbin,
 
 740 SW2d 417, 418 [Tenn]). To hold petitioner liable by piercing the corporate veil for a debt Sunshine does not owe, we think, would be inconsistent with the essential theory of the doctrine.
 

 We are not persuaded by respondents’ argument that we should disregard the corporate entity and sustain the tax against petitioner under the theory articulated in Federal tax cases
 
 (see, e.g., Moline Props. v Commissioner,
 
 319 US 436, 438-439,
 
 supra; Nelson v Commissioner of Internal Revenue,
 
 281 F2d 1, 6-7 [5th Cir 1960];
 
 Jackson v Commissioner of Internal Revenue,
 
 233 F2d 289, 290 [2d Cir 1956];
 
 Paymer v Commissioner of Internal Revenue,
 
 150 F2d 334 [2d Cir 1945]). In general, in matters relating to revenue a corporation will be recognized as having a separate taxable identity unless it is shown to have had no legitimate business purpose either in its
 
 *145
 
 formation or its subsequent existence or that it was a sham or set up for tax avoidance
 
 (see, Moline, supra,
 
 at 438-439;
 
 Nelson, supra,
 
 at 6). First, of course, we are dealing here not with Federal law but with New York decisional law and a New York sales and use tax
 
 (see,
 
 Tax Law § 1101
 
 et seq.).
 
 But, even applying the rule of the Federal cases the result would be the same, for it appears that Sunshine
 
 had a legitimate business purpose
 
 in its formation and carried on its business of owning and chartering boats thereafter. There is no showing that it was set up as a sham or for the purpose of tax avoidance.
 

 In view of the foregoing, we need not address petitioner’s further contention that he was improperly denied a nonresident’s exemption under Tax Law § 1118 (2).
 

 The judgment of the Appellate Division should be reversed, with costs, and respondent Tax Appeals Tribunal’s decision, insofar as it held petitioner personally liable for the use tax assessed and penalty imposed, annulled.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa and Smith concur; Judge Levine taking no part.
 

 Judgment reversed, etc.
 

 *
 

 There are, however, cases
 
 (see, e.g., Matter of Orda v State Tax Commn.,
 
 25 AD2d 332,
 
 affd
 
 19 NY2d 636;
 
 Matter of Redman v Mealey,
 
 270 App Div 75) generally involving tax matters where the corporation’s owner has sought to pierce the corporate veil to claim some deduction or other benefit due to the corporation
 
 (see also, Moline Props. v Commissioner,
 
 319 US 436).