■ HYLAND MEAT Co., INC., Respondent, v PETER K. TSAGARAKIS et al., Appellants. [609 NYS2d 625] —In an action, *inter alia,* to recover damages for goods sold and delivered, the defendants appeal from a judgment of the Supreme Court, Rockland County (Zeck, J.H.O), dated January 31, 1992, which, *inter alia,* is in favor of the plaintiff in the principal amount of $12,479.84 and against each of them individually, and "declared void and set aside" the sale of a restaurant by the defendants "as to [the] plaintiff, an existing creditor of * * * [the] restaurant".

Ordered that the judgment is affirmed, with costs.

Contrary to the defendants' contention, the Supreme Court properly "pierced the corporate veil" to hold the shareholders of Willoughby's Restaurant, Inc. liable for the debt owed by the restaurant to the plaintiff for deliveries of meat. As a general rule, a court will pierce the corporate veil or disregard the corporate form whenever necessary to prevent fraud or to achieve equity *(see, Billy v Consolidated Mach. Tool Corp.,* 51 NY2d 152, 163; *Walkovszky v Carlton,* 18 NY2d 414).

Piercing the corporate veil requires a showing that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury" *(Matter of Morris v New York State of Dept. of Taxation & Fin.,* 82 NY2d 135, 141). The party seeking to pierce the corporate veil must further establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene *(see, Matter of Morris v New*

*York State Dept. of Taxation & Fin., supra,* at 142). The concept is equitable in nature, and the decision whether to pierce the corporate veil in a given instance will depend on the facts and circumstances *(see, Matter of Morris v New York State Dept. of Taxation & Fin., supra,* at 141).

Upon review of the record, we find that the evidence established that the partners of MLM Associates (hereinafter the MLM partners), who were the same individuals as the shareholders of Willoughby's Restaurant, Inc., had control over the daily operations involved in running the restaurant, and used their control of the restaurant to induce the plaintiff to continue making deliveries of meat for which it was not paid. The trial testimony established that one of the MLM partners specifically assured the plaintiff's president that he would be paid for the deliveries of meat to Willoughby's Restaurant, Inc., and sent him a check drawn from the MLM partnership account for $2500, in partial payment of Willoughby's debt, in order to ensure that Willoughby's would continue receiving meat deliveries. Under these circumstances, we find that the evidence was sufficient to hold the MLM partners personally liable.

Furthermore, the Supreme Court properly found that MLM's sale of the real property, fixtures, and articles of personal property used in connection with the premises where Willoughby's Restaurant, Inc., was operated, constituted a "bulk transfer" within the meaning of UCC 6-102 (1). Moreover, since MLM was in actuality the alter ego of Willoughby's Restaurant, Inc., the plaintiff, as a creditor of Willoughby's, was entitled to the protection of the notice provisions of the bulk sales law. Accordingly, the defendants' failure to give the plaintiff notice of the bulk transfer of Willoughby's Restaurant, Inc., rendered the transfer ineffective as against the plaintiff *(see,* UCC 6-104 [1]; 6-105). Sullivan, J. P., Miller, O'Brien and Krausman, JJ., concur.