(May 26, 1998)

■ In the Matter of SHARON TOWERS, INC., Appellant, v BANK LEUMI TRUST COMPANY OF NEW YORK et al., Respondents. [673 NYS2d 138] —Order, Supreme Court, New York County (Louise Gruner Gans, J.), entered September 15, 1997, which, insofar as appealed from, granted respondents' cross-motion to dismiss appellant's petition on the grounds that Dutchess County was the appropriate venue, unanimously reversed, on the law, with costs, the petition reinstated, and the matter remanded to the New York County Supreme Court for a determination on the merits. Appeal from order, same court and Justice, entered September 10, 1997, which denied appellant's application to restrain respondents temporarily from proceeding against appellant in Dutchess County, unanimously dismissed, without costs, as academic.

This appeal concerns the proper venue of petitioner-appellant's proceeding, pursuant to CPLR 5239, to determine adverse claims to funds held by respondent bank.

Respondent Burstin Investors, Inc. (Burstin) was the limited partner and Nachum Kalka (Kalka) was the general partner in a real estate limited partnership that owned two buildings in Poughkeepsie. Burstin sued Kalka in Dutchess County Supreme Court for fraudulent and criminal conduct in connection with this real estate venture, and obtained an $8.2 million judgment. On February 27, 1996, prior to the entry of judg-

ment, that court issued a restraining order, which enjoined Kalka, and any entity controlled by him, from transferring assets out of the jurisdiction or to any other party.

Burstin then sought an order directing respondent Bank Leumi Trust Company of New York (Bank Leumi) to turn over certain funds allegedly belonging to Kalka. Upon Bank Leumi's motion, venue was transferred to New York County, as Bank Leumi maintains an office and transacts business in that county but not in Dutchess County.

Kalka, who at that time still had signatory powers for the accounts of petitioner corporation Sharon Towers, Inc. (Sharon Towers), used these powers to withdraw $530,000 from Sharon Towers' accounts at Bank Leumi. He attempted to transfer an additional $100,000—the money at issue in this appeal—but, by that time, Bank Leumi had been served with the February 27 restraining order and refused to allow him to withdraw any more money. At a hearing on April 28, 1997, the Dutchess County Supreme Court explicitly found Kalka in contempt of its February 27 order, based on his fraudulent misuse of his signatory powers. Kalka's counsel unsuccessfully argued for a narrower reading of the restraining order, namely that the court first had to find that Sharon Towers was Kalka's alter ego before concluding that the judgment creditor had an interest in the Sharon Towers accounts. However, the court explicitly declined to reach the alter ego issue as irrelevant. Significantly, neither Bank Leumi nor Sharon Towers was a party to these contempt proceedings. After being found in contempt, Kalka fled the country to avoid jail.

Sharon Towers then commenced the instant proceeding in New York County Supreme Court, pursuant to CPLR 5239, to determine the propriety of restraints placed on its Bank Leumi accounts in favor of Burstin. Sharon Towers alleged that Kalka had no present interest in that corporation nor in the Sharon Towers accounts, for which he was no longer the signatory. Sharon Towers also sought a restraining order preventing Burstin from taking any action in the Dutchess County court to restrain Sharon Towers' disposition of its property.

In response, Burstin argued that the Dutchess County court was a more appropriate venue because it was already familiar with the parties and the issues. Sharon Towers was free to intervene in any action brought therein. In its cross-motion to dismiss the New York County action, Burstin also claimed that Sharon Towers was collaterally estopped from denying that it was in privity with and owned by Kalka, in light of the Dutchess County court's finding that Kalka's transfer of funds

from the Sharon Towers account violated the February 27 order.

The motion court denied Sharon Towers' application for a restraining order and granted the cross-motion to dismiss. The court based its decision on the venue issue and did not address the collateral estoppel arguments. Sharon Towers now appeals. We find that the motion court erred in dismissing the petition.

CPLR 5221 (a) (4) provides that in a special proceeding pertaining to the enforcement of a judgment, proper venue is the county in which the respondent resides, is regularly employed, or regularly transacts business. "[I]f there is no such county, [the action may be brought] in any county in which [the respondent] may be served or the county in which the judgment was entered." (*Ibid.*)

This statute sets forth the rules for choosing the appropriate venue for a special proceeding brought under CPLR 5239 to determine adverse claims to the property sought to be levied upon (*see, Weg & Myers v Security Sys. by Hammond,* 167 Misc 2d 1042, 1044). Based on the plain language of CPLR 5221 (a) (4), litigating the action in the county where the judgment was entered (in this case Dutchess County) is improper unless the respondent does not live, work, or do business regularly in any county of New York State (*Garrison Fuel Oil v Grippo,* 127 Misc 2d 275, 277), which is not the case with respect to Bank Leumi.

Indeed, the Dutchess County court itself already rejected Burstin's arguments on this point when it granted Bank Leumi's motion to transfer Burstin's action against Bank Leumi to New York County. The order appealed from herein created a paradoxical situation in which each court held that competing claims to the Bank Leumi accounts were best resolved by the other court. It seems particularly senseless for Burstin to force Sharon Towers to litigate this action in Dutchess County, when Burstin is already pursuing its own action against Bank Leumi in New York County.

Moreover, collateral estoppel does not bar Sharon Towers from denying that it is Kalka's alter ego. The party seeking to invoke collateral estoppel must show, first, "that the identical issue was necessarily decided in the prior action and is decisive in the present action" (*D'Arata v New York Cent. Mut. Fire Ins. Co.,* 76 NY2d 659, 664), and second, that the other party had a "full and fair opportunity to contest the prior determination" of the issue (*supra,* at 664). The contempt proceeding did not decide, even by implication, that Sharon Towers was equivalent to Kalka, such that all of its funds should be subject to ex-

ecution of the judgment against him. As the court pointed out, its restraining order applied not only to funds owned by Kalka through shell corporations, but also to an independent third party's funds over which Kalka had signatory powers. Accordingly, when Kalka's lawyers tried to make Burstin prove that Sharon Towers was Kalka's alter ego as a prerequisite for finding him in contempt, the court cut off this line of inquiry as irrelevant.

For this reason, no party then before the court went into detail about the ownership structure of Sharon Towers in relation to the other corporations owned or controlled by Kalka. As stated previously, Sharon Towers itself was not a party. Thus, it cannot be said that Sharon Towers had a sufficient opportunity to litigate this issue in the prior proceeding.

Burstin urges this Court to pierce the corporate veil and determine that Kalka is the alter ego of Sharon Towers. The following facts are undisputed: Until mid-1997, Kalka was an officer of Sharon Towers and was the sole signatory on its Bank Leumi accounts. Sharon Towers' two shareholders are Migdalei Ramat Hasharon Ltd. and Ames Invest & Trade Corp. Migdalei is wholly owned by Kalka Nachum Ltd., which is wholly owned by Optima Management and Investments 66 Ltd. Kalka owns 79% of the shares of Optima. According to Burstin, Ames Invest's ties to Kalka, if any, are still unclear.

While the evidence in the record is rather persuasive, we find it best to remand the matter to the New York County Supreme Court. To justify piercing the corporate veil, it is not enough to show that the individual owned a majority interest in the corporation, either directly or indirectly. There must also be proof that the individual completely dominated the corporation, such that it was a mere device to further his personal business, and that such domination was used to commit a fraud or a wrong against the party seeking to pierce the veil (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141). These factual issues, which were never fully litigated, should not be determined for the first time on this appellate record (*Matter of PPX Enters. v Chalpin*, 209 AD2d 353).

Since we find that New York County is the appropriate venue for Sharon Towers' action, we dismiss as academic the appeal from the motion court's September 10 order, which denied Sharon Towers' motion to enjoin Burstin from proceeding against it in Dutchess County. Concur—Lerner, P. J., Milonas, Rosenberger, Nardelli and Williams, JJ.