OPINION OF THE COURT
John M. Curran, J.
*669 This is a CPLR article 78 proceeding wherein petitioner seeks a judgment annulling respondents’ determination that petitioner is operating an “Adult Care Facility” (ACF) without an operating certificate. Following denial of respondents’ motion to dismiss pursuant to the memorandum decision and order granted and entered on March 18, 2005, respondents submitted their answer and return. The parties thereafter stipulated that the record in the proceeding was complete and that an evidentiary hearing was unnecessary. In correspondence dated October 5, 2005, the court requested oral argument which was conducted on November 3, 2005. After the parties served further written memoranda, the matter was deemed submitted.
Petitioner leases units within certain residential apartment buildings to tenants, all of whom are age 65 or older. The buildings are referred to as the “Garden Houses.” Petitioner maintains these units and offers hotel-type amenities to the tenants such as dining, linen service, housekeeping, recreation, security and transportation.
Pursuant to their authority under Social Services Law § 460-c, respondents inspected the Garden Houses and determined that petitioner is operating an ACF as defined in Social Services Law § 2 (21). It is undisputed that petitioner does not possess an “operator’s certificate” as required by Social Services Law § 460-b. Petitioner claims that the respondents’ determination is in excess of their jurisdiction, constitutes a violation of lawful procedure, and is arbitrary and capricious.
Petitioner is a New York not-for-profit corporation which operates the facility that is the subject of this proceeding. The Garden Houses are located on the Harry and Jeanette Weinberg Campus, owned by Menorah Campus, Inc., a corporation which does not operate any of the facilities at the Weinberg Campus. Instead, the facilities located at the Weinberg Campus are independently operated by different subsidiary corporations of Menorah Campus, Inc. Petitioner is one of these subsidiary corporations.
According to petitioner, the Garden Houses are home to mainly memory-impaired seniors and to some non-memory-impaired seniors. While petitioner acknowledges that it offers various hotel-type amenities to its tenants, it strenuously denies providing any type of medical care or personal care to Garden House tenants. In support of its position, petitioner has submitted its “tenant lease” and “disclosure notice,” both of which corroborate petitioner’s assertions. Petitioner’s ultimate posi *670 tion is that the level of care it provides to residents of the Garden Houses is not sufficient to meet the statutory definition of an ACF.
Petitioner points out that any personal or residential care or services the tenants may require are directly contracted for by the tenant and provided by independent licensed home care services agencies (LHCSA), which are already licensed, regulated and monitored by the State of New York. The record reflects that the residents in the Garden Houses contract with Menorah Licensed Home Care Agency, an LHCSA operated by Menorah Adult Home, Inc., a licensed adult home. Menorah Adult Home, Inc. is another subsidiary of Menorah Campus, Inc. The record further reflects that residents of the Garden Houses are not required to contract with this particular LHCSA but may do so with another duly-licensed agency.
Respondents’ position is that “the close integration between the ‘separate’ corporate entities, which operate either the Garden Homes or Menorah Licensed Home Care Agency, renders their distinctive nature illusory.” (Dougherty affidavit 1 31.) Further, respondents claim that “while petitioner may not ‘directly’ provide the home care services of an adult care facility, the petitioner is closely intertwined with the on-campus home care agency, Menorah Licensed Home Care Agency, operated by Menorah Adult Home, Inc.” (Dougherty affidavit If 34.) Respondents premise their position upon an inspection conducted on May 19, 2003, after which “the inspectors all concluded that based on the level of care the residents of Garden Houses required and were receiving, Garden Houses was being operated as an unlicensed adult care facility and the operator would need to apply for certification from the Department.” (Dougherty affidavit If 28.)
The issue before the court is whether petitioner has demonstrated that respondents’ determination is in excess of respondents’ jurisdiction, constitutes a violation of lawful procedure, or is arbitrary and capricious. This proceeding is not in the nature of prohibition because the respondents did not act in a judicial or quasi-judicial capacity (see Matter of American Tr. Ins. Co. v Corcoran, 65 NY2d 828 [1985]). Petitioner also does not allege any violation of lawful procedure but rather that respondents’ determination was “baseless” (petition 11 72). Thus, the only viable cause of action is the one alleging “arbitrary and capricious action” (petition 1f 74).
“The standard of review in such a proceeding is whether the agency determination was arbitrary and capricious or affected *671 by an error of law” (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991]). “Arbitrary action is without sound basis in reason and is generally taken without regard to the facts” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). Petitioner has the burden of proving that respondents’ determination has no rational basis (Frederick v Civil Serv. Commn. of County of Schenectady, 175 AD2d 428, 430 [3d Dept 1991]). The court may not substitute its own judgment for that of the board or body whose determination is under review (Matter of Pell at 232).
To resolve the issue, the court must determine whether there is any rational basis for concluding that petitioner is operating an ACF as defined in Social Services Law § 2 (21). The Social Services Law defines “adult care facility” as follows:
“Adult care facility shall mean a family type home for adults, a shelter for adults, a residence for adults, an enriched housing program or an adult home, which provides temporary or long-term residential care and services to adults who, though not requiring continual medical or nursing care . . . are by reason of physical or other limitations associated with age, physical or mental disabilities or other factors, unable or substantially unable to live independently.” (Social Services Law § 2 [21] [emphasis added].)
As this definition makes clear, in order to qualify as an ACF, the facility also must meet the definition of one of five other types of facilities: (1) family-type home for adults; (2) shelter for adults; (3) residence for adults; (4) enriched housing program; or (5) adult home. Following oral argument, respondents made clear that they are relying solely on petitioner fitting within the definition of “enriched housing program.” The definition of “enriched housing program” is as follows:
“An enriched housing program shall mean an adult care facility established and operated for the purpose of providing long-term residential care to five or more adults, primarily persons sixty-five years of age or older, in community-integrated settings resembling independent housing units. Such program shall provide or arrange the provision of room, and provide board, housekeeping, personal care and supervision.” (Social Services Law § 2 [28] *672 [emphasis added].)
As the definition of “enriched housing program” demonstrates, a key element of such a program is that it provide “personal care.” A related issue is a separate element of the definition of an ACF which is that the operator provide “residential care and services to adults.” (Social Services Law § 2 [21].) At oral argument, respondents acknowledged that “residential care and services” should be interpreted the same as “personal care.”
The major dispute between the parties is whether petitioner provides “personal care” and “residential care and services to adults.” Petitioner claims that it does not and that any such type of care is provided solely by an LHCSA. Respondent counters by claiming that the integration of the petitioner with Menorah Licensed Home Care Agency (operated by Menorah Adult Home, Inc.), both of which are subsidiaries of Menorah Campus, Inc., is a sufficient basis to conclude that petitioner is operating an ACF.
Respondents have conceded that the hotel-type services indisputably provided by petitioner do not rise to the level of “personal care” or “residential care and services.” Rather, respondents are relying on the “personal care” and “residential care and services” provided by the LHCSA as being the foundation for the claim that petitioner is an ACF. In essence, respondents seek to have the distinctions between the corporate entities ignored and their respective services attributed to one another.
The Social Services Law does not provide a definition of “personal care” or “residential care and services.” The regulations adopted by the respondents do provide a description of what constitutes “residence services.” It is clear that the petitioner does not provide this type of care but rather it is provided solely by the LHCSA (see 18 NYCRR 488.7 [c] [1], [2] [ii]; [d], [e]). Simply put, there are no facts in the record substantiating respondents’ claim that petitioner meets the statutory definition of an ACF.
Respondents are unable to point to any statute or regulation authorizing them to ignore the distinct legal existence of the various corporations referenced in the record here. Essentially, respondents seek to pierce the corporate veil between the petitioner and Menorah Campus, Inc. and Menorah Adult Home, Inc. (operating the LHCSA) without establishing a statutory or regulatory basis to do so or any factual premise under *673 law to ignore the separateness of legal entities (see Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135 [1993]; Worthy v New York City Hous. Auth., 21 AD3d 284 [1st Dept 2005]; Matter of Total Care Health Indus. v Department of Social Servs., 144 AD2d 678 [2d Dept 1988]).
There can be no doubt that petitioner is part of a well-devised corporate structure designed to avoid the necessity of having petitioner become licensed as an ACF. This type of “look-alike” facility falls within the gaps in the licensing framework. While the State has recently sought to close at least some of the gaps through the Assisted Living Reform Act adopted in October of 2004 (more than one year after the respondents’ inspection of petitioner’s facility), this does not change the facts here which do not support the finding that petitioner is an ACF.
The court is aware that there are serious policy issues underlying these technical legal points. For petitioner, licensing would cause a substantial likelihood of closure resulting in many of their residents being forced into more restrictive living arrangements such as traditional nursing homes. Petitioner also claims that a decision requiring it to be licensed would be a dangerous precedent resulting in apartment buildings across the state having to become licensed ACFs. For respondents, they have concerns about safety issues and whether there is a level playing field in the senior housing industry between licensed and unlicensed facilities. This latter concern is no small matter given the difficult economics of senior housing resulting in the closure of numerous facilities in recent years.
Nevertheless, the policy issues are for the Legislature and the court must base its decision on the law and the facts in the record. As there is nothing in the law authorizing respondents’ position of ignoring the distinction between separate legal entities, nor any facts supporting the claim that the petitioner itself provides “personal care,” the court must grant the relief sought in the petition.
Petitioner has demonstrated that respondents have acted without any rational basis for their determination. Accordingly, petitioner may submit a judgment granting the relief sought in the petition annulling respondents’ determination that petitioner, through the Garden Houses, constitutes an ACF and that petitioner must be licensed to operate such a facility.