16-3148-cv
*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of November, two thousand seventeen.

PRESENT: GERARD E. LYNCH,
SUSAN L. CARNEY,
    *Circuit Judges,*
ALVIN K. HELLERSTEIN,[*]
    *District Judge.*

---------------------------------------------------------------

AMERICAN FEDERATED TITLE CORPORATION, a Florida corporation,

    *Plaintiff-Counter-Defendant-Appellant,*

ROBERT CORNFELD,

    *Counter-Defendant,*

     v.           No. 16-3148-cv

GFI MANAGEMENT SERVICES, INC., a New York corporation, ALLEN I. GROSS, EDITH GROSS,

    *Defendants-Counter-Claimants-Appellees.*

---------------------------------------------------------------

---

[*] Judge Alvin K. Hellerstein, of the United States District Court for the Southern District of New York, sitting by designation.

FOR APPELLANT: FRANKLIN L. ZEMEL, Arnstein & Lehr, LLP, Fort Lauderdale, FL (Joshua M. Atlas, Arnstein & Lehr, LLP, Fort Lauderdale, FL; Marc J. Rachman, Davis & Gilbert LLP, New York, NY, *on the brief*).

FOR APPELLEES: JOSEPH ZELMANOVITZ (Abraham Neuhaus, *on the brief*), Stahl & Zelmanovitz, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Wood, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on August 12, 2016, is **AFFIRMED**.

In 2007, plaintiff-appellant American Federated Title Corporation ("AFTC") negotiated a Purchase and Sale Agreement ("PSA") with GFI Acquisition, LLC ("GFIA")— one of several entities owned by defendants-appellees Allen I. Gross and Edith Gross—by which AFTC would sell real property in Florida to GFIA. Since 2007–08, the parties have been involved in protracted litigation arising from the PSA and the bankruptcies of three other related companies controlled by the Grosses ("the A&M companies").[1] AFTC now sues GFI Management Services, Inc. ("GFIM") and the Grosses (collectively, "defendants") to recover on judgments totaling $7.5 million entered against GFIA and the A&M companies in bankruptcy court in the Southern District of New York. After a three-day bench trial, the District Court rendered a mixed verdict, finding for AFTC on some of its claims and against it on others. The court later denied AFTC's motion for reconsideration of that verdict. AFTC alone appeals, arguing that the District Court erred in: (1) concluding under New York law that management fee payments made by the A&M companies to GFIM were not constructively fraudulent conveyances; and (2) declining to pierce the A&M

---

[1] The A&M companies are: A&M Florida Properties, LLC ("A&M I"); A&M Florida Properties II, LLC ("A&M II"); and A&M Florida Properties III, LLC ("A&M III").

2

companies' and GFIA's corporate veils so as to permit AFTC to recover against the Grosses and GFIM on the bankruptcy court judgments. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

On appeal from a district court's judgment entered after a bench trial, "we review the court's findings of fact for clear error and its conclusions of law *de novo*." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 96 (2d Cir. 2010)). "In considering claims based in New York law (as here), this Court 'determine[s] *de novo* what the law of New York is.'" *In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997)).[2] To determine New York law, we look first to decisions of the New York Court of Appeals, and, if that court has not ruled on the issue, we "may consider lower New York court opinions as the best indicators of how the Court of Appeals might decide an issue." *Id.* (internal quotation marks omitted). To the extent AFTC challenges the District Court's denial of its motion for reconsideration, we review that decision for abuse of discretion. *See RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 316 (2d Cir. 2003) (per curiam).

**I.      Management fee payments**

In challenging the District Court's conclusion that the management fee payments to GFIM should not be deemed constructively fraudulent conveyances, AFTC argues: (1) that the District Court should have applied an "*irrebuttable* presumption that the management fee payments lacked good faith," Appellant's Br. 19 (emphasis in original); and (2) that the District Court did not properly consider the good faith element of fair consideration in its analysis. We find neither argument persuasive.

Sections 272, 273, and 273-a of New York's Debtor and Creditor Law together provide the building blocks for identifying fraudulent conveyances under New York law. Sections 273 and 273-a provide that, to be deemed fraudulent, payments for such conveyances must have been made "without a fair consideration," in addition to the

---

[2] The parties agree that New York law governs this dispute.

3

transferor failing to meet certain requirements related to its financial health. *See* N.Y. Debt. & Cred. Law § 273; *see also* N.Y. Debt. & Cred. Law § 273-a. New York law deems "fair consideration" to have been given "for property, or obligation" in two circumstances:

> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and *in good faith*, property is conveyed or an antecedent debt is satisfied, or
>
> b. When such property, or obligation is received *in good faith* to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. Debt. & Cred. Law § 272 (emphasis added).

We have recognized that, under New York law, "even the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance, whether or not it prejudices other creditors, because the basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy *some* of his creditors; it normally does not try to choose among them." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995) (internal quotation marks and alteration omitted) (emphasis in original). We have also held, however, that this general rule does not apply to repayment of a pre-existing debt when that debt is owed to "an officer, director, or major shareholder of the transferor." *See Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 249 (2d Cir. 1987).

The thrust of AFTC's first argument—that the District Court erred in finding that the management fee payments to GFIM were made for "fair consideration"—is that we should not adhere to our decision in *HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2d Cir. 1995). In *HBE Leasing*, we distinguished "preferential payments of *pre-existing* obligations . . . to a debtor corporation's shareholders, officers, or directors" from transfers made in exchange for "*contemporaneous* advance[s] of funds." *Id.* at 634–35 (first emphasis added). We observed there that the latter category of payments "could not be found to be fraudulent[ ]" because "a present advance of commensurate value does not ordinarily prejudice other creditors" and thus does not trigger an irrebuttable presumption of an absence of good faith. *Id.* at 635.

4

AFTC claims that *HBE Leasing* is no longer good law because "state court appellate decisions have all evolved beyond, if not having all outright contradicted, the good faith limitation in *HBE*." Reply Br. 5. In support of this sweeping contention, AFTC cites three New York appellate division cases (from two different departments), as well as a mix of district court and bankruptcy court decisions, some of which predate our decision in *HBE Leasing*. But the cited appellate division cases present factual scenarios materially different from that at hand.[3] And at least one of the decisions on which AFTC relies condemns transfers for contemporaneous value only upon a specific finding that the purportedly fraudulent transfer harmed the creditor. *See Matter of Bernasconi v. Aeon, LLC*, 105 A.D.3d 1167, 1169 (N.Y. App. Div. 3d Dep't 2013) ("[W]here . . . a corporate insider participates in both sides of the transfer and the insider controls the transferee, the transfer will be deemed to have been made in bad faith *if made to a creditor's detriment . . . .*" (emphasis added)). Here, the District Court found the opposite had occurred. *See Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 126 F. Supp. 3d 388, 411 (S.D.N.Y. 2015) ("As transfers made for equivalent value, the management fees could not have served to *reduce* the value of the A&M companies and frustrate AFTC's efforts to collect its debts." (emphasis in original)).

Moreover, post-*HBE Leasing* decisions of several state and federal courts echo the distinction that we drew in *HBE Leasing*. *See, e.g.*, *Bank of Commc'ns v. Ocean Dev. Am., Inc.*, 904 F. Supp. 2d 356, 361 (S.D.N.Y. 2012); *Staudinger+Franke GMBH v. Casey*, No. 13 Cv. 6124(JGK), 2015 WL 3561409, at *11 (S.D.N.Y. June 8, 2015). And in *Cilco Cement Corp. v. White*, 55 A.D.2d 668 (N.Y. App. Div. 2d Dep't 1976), a pre-*HBE Leasing* case, the Appellate Division declined to apply the presumption of impropriety for which AFTC argues, instead concluding that continued salary payments to corporate officers of a failing corporation were not fraudulent conveyances in light of services contemporaneously rendered. *See* 55 A.D.2d at 668–69. Just as the insider's salary was approved so that he could "try[ ] to keep the

---

[3] *See Matter of Bernasconi, v. Aeon, LLC*, 105 A.D.3d 1167, 1167 (N.Y. App. Div. 3d Dep't 2013) (noting transfer of "entire remaining bank balance"); *Matter of Mega Pers. Lines, Inc. v. Halton*, 9 A.D.3d 553, 554 (N.Y. App. Div. 3d Dep't 2004) ("[Transferor] transferred substantially all of its assets to [transferee] . . . ."); *Mfrs. & Traders Tr. Co. v. Lauer's Furniture Acquisition, Inc.*, 226 A.D.2d 1056, 1057 (N.Y. App. Div. 4th Dep't 1996) (same).

5

struggling debtor 'afloat' and save the business," Reply Br. 10, so too the management fee payments here compensated GFIM for work that enabled the AFTC-owned properties to retain their rental and sale values.[4] We therefore find no reason to fault the District Court for following *HBE Leasing* and declining to apply an irrebuttable presumption that the payments for contemporaneous value lacked fair consideration.

We also identify no error in the District Court's ruling that the transfers were not shown to be tainted by an absence of good faith. Although, in its initial bench trial ruling on the conveyances, the District Court did not explicitly evaluate the good faith element of fair consideration, it did so in its ruling on AFTC's motion for reconsideration. *See Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 13-CV-6437 (KMW), 2016 WL 4290525, at \*3–\*5 (S.D.N.Y. Aug. 11, 2016). There, the District Court observed pointedly that AFTC adduced no evidence that the transfers were made in bad faith. No more was required.[5]

## II.     Piercing the corporate veil

AFTC also challenges the District Court's decision not to pierce the corporate veil, thereby preventing AFTC from reaching the Grosses' and GFIM's assets to satisfy the bankruptcy court judgments.

The parties agree that the New York Court of Appeals' decision in *Matter of Morris v. New York State Department of Taxation and Finance*, 82 N.Y.2d 135 (1993), establishes the applicable standard under New York law. In *Morris*, the court stated, "Generally, . . . piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) [ ] such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Id.* at 141; *see id.* at 141–42 (requiring proof of "a wrongful or unjust act toward plaintiff," in

---

[4] Although AFTC asserts that it did not stipulate to the reasonableness of the management fee payments, it does not affirmatively argue on appeal (and apparently did not argue before the District Court) that they were unreasonable in amount.

[5] To the extent AFTC asserts that it "demonstrated at trial" that the Grosses orchestrated a fraudulent scheme, *see* Appellant's Br. 28, the District Court found to the contrary, *see Am. Federated Title Corp.*, 126 F. Supp. 3d at 410–11. AFTC has fallen well short of establishing on appeal that this factual finding was clearly erroneous.

6

addition to "complete domination"). Significantly, the *Morris* court further observed that the decision to pierce the corporate veil in a given instance does not rest on a mechanistic analysis: it "will necessarily depend on the attendant facts and equities." *Id.* at 141.

AFTC first argues that the District Court applied an incorrect legal standard to AFTC's veil-piercing demand, in that the court required proof of an "intentionally unjust" act. *See* Appellant's Br. 39. But as *Morris* reflects, in New York as elsewhere, "a simple breach of contract, without more, does not constitute a fraud or wrong warranting the piercing of the corporate veil." *Bonacasa Realty Co., LLC v. Salvatore*, 109 A.D.3d 946, 947 (N.Y. App. Div. 2d Dep't 2013). The District Court correctly recognized a sound justification for the rule: "If a controlling party could be held liable for any corporate transaction, regardless of the intent with which it was carried out, then proof of external control and causation alone could suffice to pierce the corporate veil." *Am. Federated Title Corp.*, 126 F. Supp. 3d at 404 n.7.

Although *Morris* does not explicitly restrict the types of "wrong[s]" that may justify veil piercing to those committed purposefully, the *Morris* court found probative in its decision not to pierce that it had before it no "evidence of an *intent* to defraud." *See* 82 N.Y.2d at 143 (emphasis added). Here, the District Court's emphasis on the evidence (or lack thereof) of any wrongful intent in defendants' acts reflected a similar effort to distinguish wrongs that, while perhaps giving rise to a claim for contract damages, fall short of supporting the extraordinary remedy of piercing the corporate veil. As in *Morris*, analysis of defendants' intent here offered one method of assessing whether the corporate form was sufficiently abused to permit veil piercing. The District Court's analysis of the veil-piercing claim is therefore fully consistent with *Morris* and New York law.

Second, AFTC takes issue with the District Court's resolution of several factual questions underlying its decision against piercing.[6] In doing so, it attempts to recast

---

[6] The District Court declined to decide whether AFTC was required to prove its constructively fraudulent conveyance and veil-piercing claims by a preponderance of the evidence or a clear-and-convincing evidentiary standard. *See Am. Federated Title Corp.*, 126 F. Supp. 3d at 405–06. We too decline to decide this question, as

7

disagreements with many of the District Court's factual findings as errors of law. For example, the District Court rejected AFTC's contention that the reason defendants, the A&M companies, and GFIA pursued aggressive litigation strategies was to effectuate an asset-stripping scheme. *See Am. Federated Title Corp.*, 126 F. Supp. 3d at 412 ("Through the PSA Action, the A&M companies and GFIA fought to compel AFTC to close on the PSA, which would have eliminated the A&M companies' arrearages and granted GFIA title to the leased properties."); *id.* (finding that A&M companies pursued bankruptcy stays to preserve status quo pending resolution of PSA Action).[7] AFTC casts these as legal errors, but they are in essence factual findings about motivation. AFTC has failed to demonstrate any clear error in these findings.

Similarly, the District Court rejected AFTC's argument that veil piercing was warranted because GFIA pursued plainly meritless litigation as an undercapitalized "dummy" entity. *See Am. Federated Title Corp.*, 2016 WL 4290525, at *3. In so ruling, the District Court noted that it "previously found[ ] [that] GFIA had legitimate reasons for pursuing the PSA Action." *Id.* Even reviewed *de novo*, this determination appears to be entirely correct. The litigation's ultimate lack of success does not establish or even suggest that GFIA was a "dummy" entity. AFTC's willingness to contract with GFIA in the PSA, with full knowledge of its status, tends to confirm the correctness of this conclusion. However strongly AFTC may have believed in its defenses to the PSA Action, the District Court found that GFIA pursued that action for legitimate reasons. *See Am. Federated Title Corp.*, 126 F. Supp. 3d at 412. We are not persuaded that this conclusion was erroneous, much less clearly erroneous.

We therefore find no error in the legal standard applied by the District Court to AFTC's veil-piercing claim or in the District Court's evaluation of the evidence that AFTC presented to support that claim.

---

neither AFTC nor defendants appealed the District Court's ruling in this regard and our resolution of this appeal is the same under either standard.

[7] The "PSA Action" was the March 2008 suit GFIA and the A&M companies brought against AFTC, in which GFIA and the A&M companies alleged "that AFTC had fraudulently induced, and then breached, the PSA." *Am. Federated Title Corp.*, 126 F. Supp. 3d at 397.

* * *

We have considered the remainder of AFTC's arguments and conclude that they are without merit. The judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court