Cortlandt St. Recovery Corp. v Bonderman (2025 NY Slip Op 07078)

Cortlandt St. Recovery Corp. v Bonderman

2025 NY Slip Op 07078

Decided on December 18, 2025

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 18, 2025

No. 104 

[*1]Cortlandt Street Recovery Corp., Plaintiff, Wilmington Trust Company, & c., Appellant,
v
David Bonderman et al., Defendants, TPG Capital-New York, Inc., et al., Respondents, et al., Defendants.

Mark C. Zauderer, for appellant. 
Paul M. O'Connor, III, for respondents. 

MEMORANDUM:
The order of the Appellate Division insofar as appealed from should be affirmed, with costs.
We previously discussed the corporate structure and financial transactions that are
the subject of this dispute in Cortlandt St. Recovery Corp. v Bonderman (31 NY3d 30 [2018]), where we affirmed an Appellate Division order denying a CPLR 3211 motion to dismiss, and we presume familiarity with those facts. As relevant here, nine entities associated with TPG Capital Management Group (TPG defendants) then moved for summary judgment dismissing the complaint [FN*]. Supreme Court denied the motion, but the Appellate Division reversed that part of Supreme Court's order (226 AD3d 103 [1st Dept 2024]).
We agree with the Appellate Division that "plaintiff's evidence is devoid of proof sufficient to raise an issue of fact as to how each of the TPG defendants, even when viewed as a collective whole, exercised complete [*2]domination over the purportedly dominated companies" or how "such domination was used to commit a fraud or wrong against the plaintiff" (id. at 105 [internal quotation marks and citation omitted]). A plaintiff seeking to pierce the corporate veil must establish that the defendants, "through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against [the plaintiff]" (see Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 142 [1993]). The TPG defendants met their initial burden on summary judgment to demonstrate that they did not abuse the privilege of doing business in the corporate form in order to perpetrate a wrong or injustice, and plaintiff failed to raise any triable issue of material fact in opposition. The Appellate Division therefore properly
granted the TPG defendants' motion for summary judgment.

WILSON, Chief Judge (concurring):

Although I concur that the order of the Appellate Division should be affirmed, I write separately to provide some substantive explanation of my rationale, which is absent from both the majority opinion and the Appellate Division opinion. In my view, the record is devoid of evidence sufficient to create a triable issue that the TPG defendants engaged in fraud.

Plaintiff, Cortlandt Street ("Cortlandt"), seeks to pierce the corporate veil of the several TPG entity defendants on the theory that, collectively, they used the 2006 recapitalization transaction to commit a fraud on the PIK investors, by draining the operating company of assets to enrich themselves [FN1]. Our decision in the prior appeal in this case (see Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 48-50 [2018]), is not relevant here. Cortlandt's failure on this appeal has nothing to do with veil piercing: its appeal fails because the evidence conclusively shows the absence of any fraud.
A court will disregard the corporate form and pierce the corporate veil when there is a showing by plaintiffs that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (Matter of Morris v New York State Dept. of Taxation and Fin., 82 NY2d 135, 140 [1993]). Because the use of the corporate form to limit liability of owners is a legal and beneficial principle of corporations, those who seek to pierce the corporate veil bear a heavy burden (see id. at 140; TNS Holdings, Inc. v MKI Sec. Corp., 92 NY2d 335, 338 [1998]).
Here, Cortlandt's attempts to pierce the corporate veil fail to raise a triable issue on prong two [FN2]. The TPG defendants met their initial burden on summary judgment to demonstrate that they did not abuse the privilege of doing business in the corporate form to perpetrate a wrong or injustice, and Cortlandt failed to raise a triable issue of material fact in opposition. Cortlandt points to no evidence in the record that supports its claim that the 2006 recapitalization at issue was fraudulent. The 2006 offering memorandum explicitly stated in detail how the proceeds of the recapitalization would be used to repay existing debt and fund the "Sponsors," that is TPG Capital Management Group and Apax Partners L.L.P., which would in turn use the proceeds to retire "deeply subordinated shareholder loans in the form of convertible preferred equity certificates ('CPECs')" held by their affiliates and others. The offering memorandum details how the conversion of these CPECs in conjunction with the new offering would result in nearly 𔚹 billion of new debt on the Hellas Group's balance sheet. As a result of this new debt entry, persons contemplating investment in the new PIK notes would understand that the almost 𔚹 billion of new notes offered would heavily increase the leverage of the company, and were not being used to pay off pure pre-existing debt obligations. Moreover, describing the use of the proceeds to pay off "loans" was accurate, because the only way the post-transaction debt could increase by 𔚹 billion was through the exercise of the conversion option of the CPECs as part of the refinancing. 
The offering memorandum also made disclosures regarding numerous risk factors, including that as a result of this issuance the company was taking on "significant leverage [that] may make it difficult [] to service [its] debt"; that the company "may not have enough cash to service [its] debt"; that the new PIK notes being offered were "structurally subordinated to all of the claims of creditors" of the operating company; that the notes issued would bear a high interest rate (because of the associated risks); and that the judgment debtors, who had no revenue generation, "were completely dependent" on the Hellas Group operating company's revenue "to make payments on the Notes or meet its other obligations." The complaint's allegations of fraud rest entirely on the 2006 recapitalization transaction itself, not from any post-closing control by the TPG defendants over the operation of the judgment debtors. The offering memorandum disclosed exactly how the recapitalization would work, how much money would go where, and the risks associated with the transaction. Because Cortlandt failed to raise a triable issue of fraud with respect to that transaction, the Appellate Division properly granted the TPG defendants' motion for summary judgment.
Order insofar as appealed from affirmed, with costs, in a memorandum. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro, Troutman and Halligan concur, Chief Judge Wilson in a concurring opinion, in which Judges Rivera and Halligan concur.
Decided December 18, 2025

Footnotes

Footnote *: Several other defendants moved for and were granted summary judgment. Those defendants are not parties to this appeal.

Footnote 1:1 In 2005, two private equity firms, TPG Capital Management Group and Apax Partners L.L.P., each acquired a 41% minority interest in Hellas Telecommunications ("Hellas"), the ultimate parent of the Hellas Group. In 2006, the Hellas Group recapitalized its debt. High yield PIK notes were issued by Hellas Finance and guaranteed by Hellas I, together the judgment debtors. 

Footnote 2: Because I conclude that Cortlandt failed to raise a triable issue on the fraud prong, I do not need to consider whether the TPG defendants controlled the judgment debtors to the level of domination required for veil piercing. I do note my skepticism, though, because complex recapitalizations such as this require someone or some group to control the entire transaction, or else it could not be accomplished. That control over the terms and closing of a recapitalization involving commonly owned or interlocking corporate entities would not, without more, amount to what I would think sufficient to set aside the corporate form.